**2024 IL 127304**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 127304)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. TOROLAN WILLIAMS, Appellant.

*Opinion filed December 19, 2024.*

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, and O'Brien concurred in the judgment and opinion.

Justice Cunningham specially concurred, with opinion.

Justice Holder White took no part in the decision.

**OPINION**

¶ 1 Defendant Torolan Williams was convicted of the first degree murder of five victims (720 ILCS 5/9-1(a)(1) (West 2008)) and sentenced to a mandatory term of

natural life imprisonment under section 5-8-1(a)(1)(c)(ii) of the Unified Code of Corrections (Code) (730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 2008)). The judgment was affirmed on direct appeal. *People v. Williams*, 2017 IL App (1st) 142733, ¶ 55. Defendant then filed a *pro se* postconviction petition in which he claimed for the first time that the sentence violates his rights under the proportionate penalties clause of the Illinois Constitution. Ill. Const. 1970, art. I, § 11. The petition alleged that the statute is unconstitutional as applied to defendant because evolving brain science supports treating emerging adult defendants as juveniles for sentencing purposes and defendant committed the offenses when he was only 22 years old. Defendant framed his postconviction claim in terms of ineffective assistance of trial counsel and appellate counsel for not pursuing the issue. The Cook County circuit court summarily dismissed the petition, and a divided panel of the appellate court affirmed. 2021 IL App (1st) 190535, ¶ 36.

¶ 2      The appellate majority held that the petition was frivolous and patently without merit because defendant did not "allege any facts particular to his case." *Id.* We agree. Although a postconviction petitioner must allege only a limited amount of factual detail, defendant failed to allege *any* facts specific to his circumstances, besides his age, as an arguable basis that section 5-8-1(a)(1)(c)(ii) violates the proportionate penalties clause as applied to him. *Id.* ¶¶ 35-36. Thus, defendant's attorneys were not ineffective for failing to raise the meritless issue at sentencing or on direct appeal. We affirm the judgments of the appellate court and circuit court.

¶ 3                                    I. BACKGROUND

¶ 4      A jury found defendant guilty of five counts of first degree murder and one count of armed robbery (720 ILCS 5/18-2(a)(2) (West 2008)) based on the 2008 shooting deaths of Donovan Richardson, Reginald Walker, Anthony Scales, Whitney Flowers, and Lakesha Doss in Richardson's home. Defendant personally shot two of the victims. His friend, Michael King, shot the other three. Defendant and King ransacked the home and took the victims' belongings to defendant's home with the help of another friend, Arthur Brown.

¶ 5      Defendant's multiple murder convictions were punishable by a mandatory natural life sentence under section 5-8-1(a)(1)(c)(ii) of the Code, which provides "the court shall sentence the defendant to a term of natural life imprisonment when

- 2 -

the death penalty is not imposed if the defendant, \*\*\* irrespective of the defendant's age at the time of the commission of the offense, is found guilty of murdering more than one victim." 730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 2008).

¶ 6        At sentencing, the circuit court noted that defendant's presentence investigative report (PSI) contained only defendant's criminal background because defendant had refused to cooperate with the officer assigned to the report. Defendant and the State each declined to add anything to the PSI, but the State submitted victim impact statements. Defendant declined to say anything in allocution. The court imposed the mandatory natural life sentence for the murders, as well as a consecutive 20-year prison term for armed robbery, which is not at issue. On direct appeal, defendant raised several evidentiary issues but did not challenge his sentence, and the judgment was affirmed. *Williams*, 2017 IL App (1st) 142733, ¶ 55.

¶ 7        In 2018, defendant filed an initial *pro se* postconviction petition that is the subject of this appeal. Defendant alleged, *inter alia*, "[a]ppellate counsel was ineffective for failing to argue that trial counsel was ineffective for failing to argue that the sentencing statute is constitutional [*sic*] as-applied to him." The underlying claim of sentencing error is that applying section 5-8-1(a)(1)(c)(ii) to defendant violated the proportionate penalties clause because "the [sentencing] court had no discretion to consider any factors such as [defendant's] age, his minimal criminal history, his actual involvement in the crime and the hallmark features of his youth."

¶ 8        The petition cited several United States Supreme Court decisions for the principle that juveniles are constitutionally different from adults for sentencing purposes and less deserving of the most severe punishments. And, the petition alleged, "there has been a growing consensus that the brain research on which these cases relied has itself evolved to demonstrate that the brains of young adults continue to develop into their mid-20s."

¶ 9        The petition cited literature generally describing the ongoing maturation of young adults' brains, including areas that control impulsivity and judgment. A separate claim in the petition mentioned that defendant was 22 years old at the time of the shootings. However, the petition did not allege anything else about defendant's background or the circumstances of the shootings that might demonstrate that his youth and immaturity played a role in the murders. Defendant attached his own affidavit concerning claims unrelated to the proportionate

penalties clause, but he did not otherwise attach any affidavits, records, or other evidence to the petition to support the sentencing claim. Nevertheless, the petition concluded that allowing defendant "to die in prison shocks the moral sense of the community, and violates the proportionate penalties clause as-applied to him." The petition requested a new sentencing hearing for the circuit court to consider defendant's youth and rehabilitative potential.

¶ 10    The circuit court summarily dismissed the petition, and a divided panel of the appellate court affirmed the dismissal. The appellate majority concluded that a young adult defendant who claims that *Miller v. Alabama*, 567 U.S. 460 (2012), protects him from a mandatory life sentence "must allege 'how the evolving science on juvenile maturity and brain development *** applies to [his] specific facts and circumstances.' " 2021 IL App (1st) 190535, ¶ 28 (quoting *People v. Harris*, 2018 IL 121932, ¶ 46). The majority determined that defendant had not sufficiently invoked *Miller* because the petition did not allege any facts specific to defendant, besides his age, that if proved would render him more akin to a juvenile than an adult when he committed his offenses. *Id.* ¶¶ 28, 31.

¶ 11    The dissenting justice concluded that defendant had satisfied the low threshold for advancing to the second stage of postconviction review. *Id.* ¶¶ 45-46 (Mikva, P.J., dissenting). The dissent reasoned that a *pro se* petitioner like defendant should not be expected to allege anything besides his age, especially where the record contained no additional facts to support his claim because the petitioner has no reason to offer those facts at sentencing. *Id.* The dissent concluded that "[h]is argument—that as applied to him the statute mandating that he receive a natural life sentence violates the proportionate penalties clause of the Illinois Constitution—has an arguable basis in law and is not positively contradicted by the record in this case." *Id.* ¶ 47. We allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2020).

¶ 12                                II. ANALYSIS

¶ 13                        A. The Post-Conviction Hearing Act

¶ 14    The Post-Conviction Hearing Act (Act) provides a means for individuals serving criminal sentences to assert that their convictions resulted from a substantial

- 4 -

denial of their constitutional rights. 725 ILCS 5/122-1 *et seq.* (West 2018); *People v. Hilliard*, 2023 IL 128186, ¶ 18. Postconviction proceedings are commenced by the filing of a petition, which must, among other things, "clearly set forth the respects in which petitioner's constitutional rights were violated." 725 ILCS 5/122-2 (West 2018).

¶ 15    The Act prescribes a three-stage process for adjudicating petitions. *Hilliard*, 2023 IL 128186, ¶ 19. Defendant's petition was summarily dismissed at the first stage, which sets a low threshold and requires only a limited amount of detail in the petition because most petitions are drafted at this stage by defendants with little legal knowledge or training. See *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). A *pro se* defendant must state only the "gist" of a constitutional claim by alleging enough facts to make out a claim that is arguably constitutional for purposes of invoking the Act. *Id.* The "gist" of a constitutional claim means the petition meets the pleading requirements of section 122-2, even if the petition lacks formal legal arguments or citations of legal authority. *Id.*

¶ 16    The low threshold set at the first stage does not mean that a *pro se* petitioner is excused from providing any factual detail at all surrounding the alleged constitutional violation. *Id.* at 10. Section 122-2 provides that "[t]he petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2018). This supporting-evidence requirement is intended to establish that a petition's allegations are capable of objective or independent corroboration. *Hodges*, 234 Ill. 2d at 10. " 'Thus, while a *pro se* petition is not expected to set forth a complete and detailed factual recitation, it must set forth some facts which can be corroborated and are objective in nature or contain some explanation as to why those facts are absent.' " *Id.* (quoting *People v. Delton*, 227 Ill. 2d 247, 254-55 (2008)).

¶ 17    The circuit court must liberally construe the allegations and accept them as true unless the record contradicts them. *Id.* If the court independently determines that the petition is "frivolous or is patently without merit," it must dismiss the petition. 725 ILCS 5/122-2.1(a)(2) (West 2018). A petition is frivolous or patently without merit only if it has no arguable basis in law or fact, meaning that it relies on an indisputably meritless legal theory or a fanciful factual allegation. *Hodges*, 234 Ill.

2d at 16. If the circuit court does not dismiss the petition as frivolous or patently without merit, the petition advances to the second stage (725 ILCS 5/122-2.1(b) (West 2018)), where counsel may be appointed to an indigent defendant (*id.* § 122-4) and where the State shall file a motion to dismiss or an answer to the petition (*id.* § 122-5). *Hodges*, 234 Ill. 2d at 10-11. We review the circuit court's summary dismissal of a postconviction petition *de novo*. *Id.* at 9.

¶ 18                    B. Forfeiture and Ineffective Assistance of Counsel

¶ 19      The State contends that defendant forfeited any argument related to the proportionate penalties clause because he raised it for the first time in his postconviction petition. Notably, the petition expressly alleged a claim of ineffective assistance of counsel, rooted in his trial counsel and appellate counsel failing to assert his rights under the proportionate penalties clause. The petition stated "appellate counsel was ineffective for failing to argue that trial counsel was ineffective for failing to argue that the sentencing statute is constitutional [*sic*] as-applied to him."

¶ 20      When a postconviction petitioner asserts claims that could have been raised on direct appeal, he can avoid the procedural bar of forfeiture by casting his claims as ineffective assistance of appellate counsel for failing to raise the issues on direct appeal. *People v. Addison*, 2023 IL 127119, ¶ 23. Here, defendant avoided potential forfeiture by casting the proportionate-penalties claim as one of ineffective assistance of counsel.

¶ 21      In a related argument, the State contends that defendant forfeited his ineffective assistance claim by arguing only the underlying proportionate penalties issue on postconviction appeal in the appellate court. Defendant replies that the State did not raise its forfeiture argument in the appellate court either. This appeal concerns *de novo* review of the *petition*, not the parties' prior arguments, and any forfeiture of those arguments is a limitation on the parties and not on this court. See *People v. Ratliff*, 2024 IL 129356, ¶ 26. In this case, we elect to overlook any forfeiture to resolve the appeal.

¶ 22      Whether a defendant received ineffective assistance of counsel is subject to the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v.*

*Rogers*, 2021 IL 126163, ¶ 17. " 'To establish that a defendant was deprived of effective assistance of counsel, a defendant must establish both that his attorney's performance was deficient and that the defendant suffered prejudice as a result.' " *Id.* (quoting *People v. Pugh*, 157 Ill. 2d 1, 14 (1993)). Counsel cannot be considered ineffective for failing to make or pursue what would have been a meritless motion or objection. *Id.* ¶ 32; *People v. Edwards*, 195 Ill. 2d 142, 165 (2001). This appeal turns on whether the proportionate-penalties claim articulated by defendant in his petition would have been potentially meritorious if presented at sentencing or on direct appeal such that defendant's attorneys were ineffective for not pursuing it.

¶ 23                    C. The Proportionate Penalties Clause

¶ 24       The proportionate penalties clause states: "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11.

> "A statute violates the proportionate penalties clause if either the penalty is harsher than the penalty for a different offense containing identical elements (*People v. Sharpe*, 216 Ill. 2d 481, 521 (2005)) or 'the punishment for the offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community' (*People v. Miller*, 202 Ill. 2d 328, 338 (2002) (*Leon Miller*))." *Hilliard*, 2023 IL 128186, ¶ 20.

Defendant challenges his natural life sentence under the latter standard. "Punishments satisfying this standard have not been delineated because, 'as our society evolves, so too do our concepts of elemental decency and fairness which shape the 'moral sense' of the community.' " *Id.* (quoting *People v. Miller*, 202 Ill. 2d 328, 339 (2002) (*Leon Miller*)). "A court reviews 'the gravity of the defendant's offense in connection with the severity of the statutorily mandated sentence within our community's evolving standard of decency.' " *Id.* (quoting *Leon Miller*, 202 Ill. 2d at 340).

¶ 25       A constitutional challenge to a statute may be facial or as applied. *Harris*, 2018 IL 121932, ¶ 38. A facial challenge requires a showing that the statute is unconstitutional under any set of facts, whereas an as-applied challenge is dependent on the particular facts and circumstances of the challenging party. *Id.*

The distinction is critical because defendant, by presenting an as-applied challenge to a mandatory sentencing statute, must ultimately overcome the presumption that the statute is constitutional by clearly establishing that the statute is invalid as applied to him. *People v. House*, 2021 IL 125124, ¶ 18.

¶ 26                                    D. Postconviction Pleading

¶ 27        Defendant's petition cited *Roper v. Simmons*, 543 U.S. 551, 578-79 (2005) (the eighth and fourteenth amendments (U.S. Const., amends. VIII, XIV) prohibit capital sentences for juveniles who commit murder), *Graham v. Florida*, 560 U.S. 48, 82 (2010) (the eighth amendment prohibits mandatory life sentences for juveniles who commit nonhomicide offenses), and *Miller*, 567 U.S. at 489 (the eighth amendment prohibits mandatory life sentences for juveniles who commit murder), for the proposition that juveniles are constitutionally different from adults and less deserving of the most severe punishments. The petition alleged the reasoning from those cases should be extended to his specific circumstances as a 22-year-old who was convicted of five first degree murders.

¶ 28        Defendant argues on appeal that, although he was 22 years old when he committed the murders, he is entitled to *Miller*'s protection because studies have shown that the brains of young adults, like those of juveniles, are still developing in areas relevant to maturity and moral culpability. He contends the statute mandating his life sentence is unconstitutional as applied to him where the sentencing court could not fully consider the characteristics of youth or his personal culpability.

¶ 29        We have cited *People v. Thompson*, 2015 IL 118151, and *Harris* in stating that "this court has not foreclosed 'emerging adult' defendants between 18 and 19 years old from raising as-applied proportionate penalties clause challenges to life sentences based on the evolving science on juvenile maturity and brain development." *People v. Clark*, 2023 IL 127273, ¶ 87. "[T]hose cases addressed the possibility of a defendant raising a *Miller*-based challenge with respect to *mandatory* life sentences in *initial* postconviction petitions," which is what defendant has undertaken here. (Emphases in original.) *Id.* ¶ 88. We note that defendant was older than the defendants in *Thompson* and *Harris*, which itself casts

- 8 -

doubt on the validity of his claim, but even if his underlying proportionate-penalties claim had an arguable basis in law, it does not have an arguable basis in fact.

¶ 30     The petition asserted that defendant's natural life sentence is excessive, considering his criminal history, his involvement in the crime, and "the hallmark features of his youth." But neither the petition nor his affidavit mentioned anything about the "hallmark features" of defendant's youth, besides his age, that might support a proportionate penalty challenge to his life sentence based on the evolving science on juvenile maturity and brain development.

¶ 31     An emerging adult postconviction petitioner who simply cites his age at the time of the offense and the evolving science on juvenile maturity and brain development does not state the gist of an as-applied claim that a mandatory life sentence violates the proportionate penalties clause of the Illinois Constitution. Adopting defendant's position that a 22-year-old serving a mandatory life sentence can advance his petition to the second stage by citing brain research without placing it in the context of his personal circumstances would effectively negate the factual pleading requirements of section 122-2 of the Act.

¶ 32     Defendant relies on the principle that a postconviction petitioner must allege only a limited amount of factual detail to avoid first-stage dismissal. But defendant conflates factual allegations, which need to be pleaded at least partially, with legal arguments, which do not. See *Hodges*, 234 Ill. 2d at 9 (while a *pro se* petitioner is not required to make legal arguments or cite legal authority to survive first-stage dismissal, he must still allege sufficient factual detail to place his constitutional claims before the court). Here, the petition articulated a legal argument that is impressively detailed for a *pro se* petitioner, but the legal assertions are not a substitute for particular facts and circumstances related to defendant.

¶ 33     Defendant asks this court to remand the petition to the circuit court for the appointment of counsel and second-stage proceedings to develop his factual allegations. He compares his case to *People v. Carrasquillo*, 2020 IL App (1st) 180534, ¶ 109, where the appellate court advanced a successive postconviction petition past the leave-to-file stage. The court observed that Carrasquillo could not have possibly alleged an as-applied postconviction challenge to a *de facto* life sentence in his initial postconviction proceeding in 1987 because he could not have anticipated the *Miller* line of cases beginning in 2012 and could not have raised a

claim based on a line of cases that had not been decided yet. *Id.* ¶¶ 108-09. Carrasquillo, the court noted, was stuck in a "catch-22" because, "[w]ithout a developed record, he cannot show his constitutional claim has merit, and without a meritorious claim, he cannot proceed to develop a record." *Id.* ¶ 109.

¶ 34  Defendant claims he was stuck in a similar catch-22 in that his eligibility for a mandatory life sentence obviated any reason to present mitigating evidence at sentencing. He asserts that, without a sentencing record to rely on, he could not allege a factual basis for his proportionate-penalties argument. We disagree. To survive first-stage summary dismissal, defendant was required only to allege—not prove—enough facts to make out a claim that is arguably constitutional for purposes of invoking the Act. *Hodges*, 234 Ill. 2d at 9. Evidence presented in mitigation at sentencing might have corroborated such allegations, but the omission of mitigating evidence from the record did not preclude defendant from alleging facts about himself in his petition. As the State noted during oral argument, a *pro se* postconviction petitioner can draw from personal knowledge of his own background when drafting the petition, regardless of whether the information was presented at sentencing.

¶ 35  Defendant is requesting a remand for the appointment of counsel to develop factual allegations, not to compile and present evidence to prove a claim that he already alleged. The difference is illustrated by *People v. Savage*, 2020 IL App (1st) 173135, *abrogated by Hilliard*, 2023 IL 128186, ¶ 28, where the 22-year-old defendant alleged that his discretionary 85-year sentence was unconstitutional under the proportionate penalties clause as the sentencing statute applied to him. Although *Savage* has been abrogated (*Hilliard*, 2023 IL 128186, ¶ 28), his postconviction pleading provides an example of how a *pro se* petitioner can allege at least some facts to support an as-applied proportionate penalties claim.

¶ 36  In stark contrast to defendant, Savage alleged that he shared certain behavioral characteristics with juvenile offenders and those allegations were not contradicted by the record:

"[Savage's] petition alleges that he had been a drug addict since he was nine years old, that he was using drugs every day at the time of the offense, and that he was attempting to rob a drug house when the offenses at issue occurred. His petition further alleges that his long-term addiction and his young age left him

'more susceptible to peer pressure' and 'more volatile in emotionally charged settings.'

These allegations find support in the hospital discharge report that was filed in connection with the preparation of the PSI. The hospital discharge report was prepared when [Savage] was 15 and indicates that [Savage] began abusing drugs six years earlier, or when he was 9 years old. This corroborates [Savage's] allegation that he began using drugs when he was nine years old. The report states that [Savage's] behavior deteriorated remarkably at nine years of age, when the drug use began. The report indicates that, by the time he was 15 years old, [Savage] was consuming 'a considerable amount of drugs,' with the result that his mother was fearful of his potentially volatile behavior. Again, this corroborates [Savage's] allegation that his long-term addiction and young age left him 'more susceptible to peer pressure' and 'more volatile in emotionally charged settings.' The report also indicates that [Savage] was in special education classes and suffered from persistent depression and a conduct disorder." *Savage*, 2020 IL App (1st) 173135, ¶¶ 71-72.

¶ 37 Here, the dissenting justice in the appellate court determined that Savage's petition and defendant's petition are comparable because neither was contradicted by the record. 2021 IL App (1st) 190535, ¶¶ 43-44 (Mikva, P.J., dissenting). But while Savage's hospital discharge report corroborated his allegation that his youth and history of drug use made him more susceptible to peer pressure and more volatile in emotionally charged settings, defendant's only factual allegation pertaining to his youth and immaturity was his age. Defendant's proportionate penalties argument was not contradicted by the record because there was nothing in the petition to contradict, as defendant did not allege any facts specific to him that would be capable of objective or independent corroboration. See *Hodges*, 234 Ill. 2d at 10.

¶ 38 Defendant alternatively argues that the record contains facts that support his proportionate penalties argument and "shed light on at least some of the attendant characteristics of youth described by *Miller*." Specifically, defendant cites trial counsel's statements to the jury that defendant, at the time of the shootings, was a "smart aleck kid" who was "manipulated by older, wiser people who he thought he could trust and were his friends." However, the petition did not allege defendant

was manipulated or acted impulsively, and it did not mention anything about his background or the circumstances of the shootings that might support such an assertion. And defendant did not attach anything to his petition to challenge his sentence or state why the same was not attached. See 725 ILCS 5/122-2 (West 2018); *Hodges*, 234 Ill. 2d at 10.

¶ 39    Moreover, even if defense counsel's statements about immaturity and manipulation could be attributed to defendant for purposes of postconviction pleading, the notion that defendant committed five murders while he was the functional equivalent of a juvenile is contradicted by the record. The jury heard evidence that all five victims died from gunshot wounds to the head, three of the victims were shot at close range, and defendant personally shot at least two of the victims. Defendant planned the armed robbery of a victim's home, solicited the help of others, armed himself, ransacked nearly every part of the house, and stole numerous items from the victims. The jury heard testimony that defendant laughed as he transported the proceeds to his own home and distributed and sold them. Defendant was the instigator of the criminal plan and a principal offender in the unprovoked murder of *five* victims. The evidence at trial refutes the notion that defendant was a "smart aleck kid" who was manipulated into committing multiple murders.

¶ 40                                    III. CONCLUSION

¶ 41    Defendant failed to meet the low threshold of pleading a limited amount of factual detail particular to him that might support a claim that section 5-8-1(a)(1)(c)(ii) of the Code violates his rights under the proportionate penalties clause of the Illinois Constitution. Therefore, defendant's postconviction petition failed to state the gist of a constitutional claim that appellate counsel was ineffective for failing to argue trial counsel's ineffectiveness for not arguing that the statute is unconstitutional as applied to defendant. We affirm the summary dismissal of the postconviction petition.

¶ 42    Judgments affirmed.

¶ 43          JUSTICE CUNNINGHAM, specially concurring:

¶ 44          I agree with the majority that the judgment of the appellate court, which affirmed the trial court's dismissal of the defendant's postconviction petition, must be affirmed. I disagree, however, with the majority's reasoning in reaching that result. Accordingly, I specially concur.

¶ 45          The defendant, Torolan Williams, was convicted of murdering five people. Williams was 22 years old at the time he committed the five murders. Because he was convicted of multiple murders, Williams was sentenced to a mandatory term of natural life imprisonment pursuant to section 5-8-1(a)(1)(c)(ii) of the Unified Code of Corrections (Code) (730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 2008)). That provision states that "the court shall sentence the defendant to a term of natural life imprisonment when the death penalty is not imposed if the defendant, *** irrespective of the defendant's age at the time of the commission of the offense, is found guilty of murdering more than one victim." *Id.* Williams's convictions were affirmed on direct appeal in the Illinois Appellate Court. *People v. Williams*, 2017 IL App (1st) 142733.

¶ 46          On October 24, 2018, Williams filed a *pro se* postconviction petition in the circuit court of Cook County, in which he alleged that he received ineffective assistance of counsel from both his trial and appellate attorneys when they failed to argue that the mandatory sentencing scheme set forth in section 5-8-1(c)(2)(ii) of the Code violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). In so arguing, Williams did not contend that the Illinois General Assembly is prohibited from requiring a mandatory life sentence for *all* defendants who commit multiple murders. Rather, his contention was that the Illinois General Assembly was prohibited from adopting such a sentencing scheme for "young adults" who commit multiple murders. More specifically, Williams maintained that the Illinois General Assembly violated the proportionate penalties clause of the Illinois Constitution when it enacted section 5-8-1(c)(2)(ii) of the Code because the statute impermissibly removes all sentencing discretion from the trial court, thereby prohibiting the court from considering any individual characteristics of a "young adult" defendant, including his "age, his minimal criminal history, his actual involvement in the crime and the 'hallmark features of his youth.' "

¶ 47　　　In support of his claim that section 5-8-1(c)(2) of the Code is unconstitutional under the Illinois Constitution, Williams cited *Miller v. Alabama*, 567 U.S. 460 (2012). In that case, the United States Supreme Court held that "the Eighth Amendment [of the United States Constitution] forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Id.* at 479. Williams did not dispute that *Miller*'s holding was limited to juveniles, *i.e.*, those under 18, but argued that the reasoning and rule of *Miller* should be extended to all "young adults," including himself, as a matter of Illinois law under the proportionate penalties clause of the Illinois Constitution.

¶ 48　　　Williams further cited cases and law review articles discussing the brain science of "young adults" and maintained there is an emerging consensus that the brains of "young adults" continue to develop into their mid-twenties. Relying on this science regarding brain development, Williams asserted that the court should find the proportionate penalties clause of the Illinois Constitution prohibits mandatory life sentencing schemes for "young adults," such as himself, who commit multiple murders.

¶ 49　　　The trial court summarily dismissed Williams's petition. The court found that, because Williams was 22 years old when he committed the five murders, the constitutional protections of *Miller* and its progeny were irrelevant to his claim. The trial court explained that "there can be no constitutional violation by the trial court, where the trial court was legislatively mandated to impose a mandatory life sentence" by a constitutional statute.

¶ 50　　　On appeal, a majority of the appellate court affirmed the trial court's dismissal of Williams's petition. 2021 IL App (1st) 190535, ¶ 36. The appellate court did so, however, not on the basis given by the trial court but on the ground that Williams "did not allege any facts particular to his case." *Id.* According to the appellate court, "[n]othing in the record or in [Williams's] petition supported his allegation that the trial court should have considered him a juvenile when he committed the offenses as an adult." *Id.* For this reason, his claim under the Illinois Constitution failed. *Id.*

¶ 51　　　Before this court, Williams again asserts that *Miller*'s reasoning should be extended to "young adults" under the proportionate penalties clause of the Illinois Constitution and that the proportionate penalties clause prohibits mandatory life sentencing schemes for "young adults" who commit multiple murders. Williams

again points to cases and law review articles noting that the brains of "young adults" are still developing and therefore are more akin to the brains of juveniles in regard to maturity and moral culpability. And he again claims that the proportionate penalties clause of the Illinois Constitution requires that the sentencing judge be given the opportunity to consider any potentially mitigating evidence before imposing a natural life sentence on a "young adult" who commits multiple murders. I disagree.

¶ 52 Williams has not pointed to anything in the text or history of the proportionate penalties clause of the Illinois Constitution that suggests that the Illinois General Assembly may not set 18 as the age at which a defendant who commits multiple murders must receive a natural life sentence. Instead, Williams's argument is based solely on the science regarding young adult brains.

¶ 53 This court addressed the issue of brain science in *People v. Harris*, 2018 IL 121932. There, this court considered the argument of the defendant in that case, who was just over 18 years old and asserted that his mandatory sentence of 76 years' imprisonment was unconstitutional under the eighth amendment of the United States Constitution (U.S. Const., amend. VIII). *Harris*, 2018 IL 121932, ¶ 60. This court rejected the argument and, in so doing, noted that the United States Supreme Court has determined that the traditional line between juveniles and adults was set at age 18 and that scientific studies regarding young adult brains did not change this determination. *Id.* We stated:

"[T]he line drawn by the Supreme Court at age 18 was not based primarily on scientific research. The Supreme Court acknowledged its line at age 18 was an imprecise 'categorical rule[ ]' but emphasized that 'a line must be drawn.' [*Roper v. Simmons*, 543 U.S. 551, 574 (2005)]. The Court drew the line at age 18 because that 'is the point where society draws the line for many purposes between childhood and adulthood.' *Roper*, 543 U.S. at 574. New research findings do not necessarily alter that traditional line between adults and juveniles." *Id.*

¶ 54 This reasoning applies with equal force to the proportionate penalties clause of the Illinois Constitution. It is well within the constitutional authority of the Illinois General Assembly to establish 18 as the age of majority. Further, it is the legislature's prerogative to determine that 18 is the age at which defendants who

commit multiple murders *must* receive a natural life sentence, regardless of their individual circumstances. The Illinois General Assembly has access to the same literature regarding evolving brain science and is, of course, free at any time to raise the age of majority if it so chooses.

¶ 55    Apart from his argument regarding brain science, Williams offers no explanation as to why the Illinois General Assembly is prohibited from enacting a mandatory life sentencing scheme for "young adult" defendants, such as himself, who commit multiple murders. Williams's postconviction petition therefore fails as a matter of law.

¶ 56    The majority affirms the dismissal of Williams's petition, but like the appellate court, it does so on the grounds that his petition lacked factual support. *Supra* ¶ 41. The majority states that "even if [Williams's] underlying proportionate-penalties claim had an arguable basis in law, it does not have an arguable basis in fact." *Supra* ¶ 29. In other words, the majority assumes—without deciding—that Williams is correct and that the Illinois General Assembly may not enact a mandatory life sentence scheme for "young adults" who murder multiple people. Williams's petition still fails, however, because, in the majority's view, even if that premise were true, Williams has failed to offer any factual support as to why he would not be deserving of a natural life sentence.

¶ 57    In my view, this analysis is misplaced. Statutes are presumed constitutional. *People v. McKown*, 2022 IL 127683, ¶ 29. As such, we must presume that the Illinois General Assembly may constitutionally enact a sentencing scheme that mandates life in prison for defendants over the age of 18 who murder multiple people. We may not simply assume the opposite.

¶ 58    For the reasons noted above, Williams has not overcome the presumption of constitutionality afforded the mandatory sentencing scheme set forth in section 5-8-1(c)(2)(ii) of the Code. See *id.* ("the party challenging the constitutionality of a statute has the burden of clearly establishing its invalidity"). That being the case, Williams's petition fails as a matter of law and was properly dismissed by the trial court.

¶ 59    For these reasons, I specially concur.

¶ 60    JUSTICE HOLDER WHITE took no part in the consideration or decision of this case.