2025 IL App (1st) 231929-U

FIRST DIVISION
March 3, 2025

No. 1-23-1929

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Respondent-Appellee, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | No. 00 CR 10872 |
| LESTER DOBBEY, | ) | |
| | ) | Honorable |
| Petitioner-Appellant. | ) | Michael B. McHale, |
| | ) | Judge Presiding. |
| | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justice Pucinski concurred in the judgment.
Justice Lavin dissented.

**O R D E R**

¶ 1    *Held*: The circuit court erred in dismissing the petitioner's *pro se* successive postconviction petition after our remand for further second-stage proceedings on the basis that the petitioner failed to establish the requisite cause of the cause-and-prejudice-test.

¶ 2    Over 20 years ago, the 19-year-old petitioner Lester Dobbey, was convicted of first degree murder and attempted first degree murder, and sentenced to the mandatory minimum sentence of 51 years' imprisonment. The instant appeal stems from our remand of the petitioner's most recent

successive postconviction petition to the circuit court for second stage postconviction proceedings (725 ILCS 5/122-4 (West 2018)) on the petitioner's claim that, as applied to him, the 51-year sentence violated the Illinois Proportionate Penalties clause (Ill. Const. 1970, art. I, § 11). See *People v. Dobbey*, 2020 IL App (1st) 190118-U. Following our remand, the circuit court granted the Sate's motion to dismiss without considering the merits of the petitioner's claim and without permitting him to amend his *pro se* petition to include the expert opinion of his already hired mitigation expert. Instead, the circuit court found that our supreme court's recent decision in *People v. Moore*, 2023 IL 126461, "overruled" our remand for second stage postconviction proceedings because under *Moore* the petitioner failed to state the requisite cause necessary to proceed with his youth-based proportionate penalties claim in a successive petition. Because we find that the circuit court misconstrued the procedural posture of this case, we reverse and remand with instructions.

¶ 3                             I. BACKGROUND

¶ 4      The facts of this case have already been fully set forth in our 2020 order remanding the petitioner's proportionate penalties claim for second-stage postconviction proceedings. *Dobbey*, 2020 IL App (1st) 190118-U. Accordingly, we only briefly summarize those facts and procedural history relevant to the resolution of the issues raised here.

¶ 5      In 2000, the petitioner was charged with numerous crimes for his involvement in the March 31, shooting of three victims, Dorsey Williams, Michael Cole, and Terence Robinson, which left Williams dead. After a jury found the petitioner guilty of the first degree murder of Williams and the attempted first degree murder of Cole, but acquitted him of the attempted first murder of Robinson, the trial court sentenced the petitioner to 51 years' imprisonment. This sentence was the

minimum mandatory sentence permitted under the statute.[1]

¶ 6    During the original sentencing hearing, the *pro se* petitioner offered no evidence or argument in mitigation. On the other hand, the State relied on victim impact statements, the presentence investigation report (PSI), and the testimony of several Chicago police officers with personal knowledge of the petitioner's prior criminal background, gang-affiliation, and use of firearms, to argue that the instant crimes warranted a "substantial sentence."

¶ 7    In imposing the 51-years sentence, the trial judge recognized that the petitioner had a "very disruptive life" and had been involved in "criminal activity ever since early childhood, since the age of 13 at least." The court further acknowledged that the petitioner's lifestyle and gang activity "involved him in these types of situations on an ongoing basis" and resulted in the instant crime. Accordingly, the trial judge concluded that while a "substantial sentence was warranted," under the present circumstances, "the minimum" was "substantial."

¶ 8    The petitioner's sentence was vacated on direct appeal after this court found that the trial judge had failed to properly admonish the petitioner about the sentencing range for murder, and the cause was remanded for a new sentencing hearing. *People v. Dobbey*, No. 1-02-3452 (Oct. 8, 2004) (unpublished order pursuant to Illinois Supreme Court Rule 23).

¶ 9    On remand before the same sentencing judge, who had presided over the original sentencing hearing, the petitioner again chose to represent himself and offered no evidence or

---

[1] The murder conviction carried a minimum sentence of 20-years imprisonment (730 ILCS 5/5-8-1(a)(1)(a) (West 2004)). Because the jury found that the petitioner personally discharged the firearm that caused Williams' death, the mandatory minimum firearm enhancement was 25 years (730 ILCS 5/5-8-1 (d)(iii) (West 2004)). In addition, the attempted murder conviction carried a minimum sentence of 6 years imprisonment (730 ILCS 5/5-8-1(a)(3) (West 2004)). By statute, the two sentences had to be served consecutively (730 ILCS 5/5-8-4(a)(1) (West 2004)).

arguments in mitigation. On the other hand, in aggravation, the State informed the court that it "would rely on the evidence earlier presented at the initial sentencing hearing," which was presumably part of the record, and then made identical arguments in aggravation to those it had raised earlier, namely that the seriousness of the offense, the petitioner's prior criminal background, gang involvement, and good family, reflected his "choice" to continue in his criminal behavior. Glaringly, the PSI from the original sentencing hearing was not presented to the trial judge prior to resentencing, and a new PSI was not ordered. The trial court ultimately sentenced the petitioner to the same "minimum consecutive prison terms" it had done previously, this time without any rationale.

¶ 10      After exhausting his second direct appeal options (*People v. Dobbey*, No. 1-05-2800 (Mar. 20, 2008) (unpublished order pursuant to Illinois Supreme Court Rule 23)), the *pro se* petitioner spent the next 12 years litigating a multitude of collateral actions in state and federal court.

¶ 11      Relevant to this appeal, in June 2017, he filed a supplement to his second successive postconviction petition arguing, *inter alia*, that as applied to him his 51-year sentence violated the Illinois proportionate penalties clause (Ill. Const. 1970, art I, § 11). The petitioner alleged that in imposing that sentence, the trial court did not consider any of the relevant mitigating factors, including that: (1) he grew up in extreme poverty and lived in a rodent infested house with no gas, electricity, running water, or phones; (2) he was physically abused by his father and moved often, depriving him of the opportunity to develop social and interpersonal skills; (3) he left home when he was only 14 years old and lived on the streets of Chicago, where he was threatened and robbed by gang members, and susceptible to their influence; (4) he started abusing drugs and alcohol, and committing crimes, at a young age; and (5) after turning 17 he had not committed a violent offense until the instant crime. The petitioner further asserted that he should be referred for

4

neuropsychological and psychological evaluations, to assess his cognitive, intellectual, and behavioral status and his risk of recidivism. In support, he attached, among other things, numerous articles on juvenile and adolescent brain research.

¶ 12    In August 2018, the *pro se* petitioner filed a third supplement to his second successive postconviction petition alleging the existence of new evidence and attaching a transcript of Professor Laurance Steinberg's expert testimony from the decision in the civil case of *Cruz v. U.S.*, No. 11-CV-787 (JHS) (U.S. D.C. Conn 2018) regarding the maturity of young-adults. In November 2018, he additionally requested to supplement the record with our supreme court's decision in *People v. Harris*, 2018 IL 121932, and filed a "motion to extend the record with scientific rationale," attaching the October 1, 2018, memorandum by child and adolescent development consultant, Dr. James Garbarino, titled "*Re: Scientific Rationale to extend the Graham/Roper/Miller rationale upward from age 18-25.*"

¶ 13    After the circuit court denied the petitioner leave to file his second successive petition, we reversed and remanded, holding that the petitioner had sufficiently stated cause and prejudice with respect to his proportionate penalties claim. *Dobbey*, 2020 IL App (1st) 190118-U, ¶ 35. In doing so, we held that the petitioner established cause because *Miller v. Alabama*, 567 U.S. 460 (2012), and its progeny were not decided until two years after he filed his original postconviction petition in February 2010. *Id*. ¶ 40. Moreover, we found that our supreme court did not hold that *Miller* applied retroactively to cases on collateral review until a year after the petitioner had filed his first successive postconviction petition in May 2013. *Id*. ¶ 40 (citing *People v. Davis*, 2014 IL 115595, ¶ 42).

¶ 14    We also held that the petitioner established prejudice because the trial judge was precluded from taking into account his young age and corresponding rehabilitative potential before imposing

the mandatory minimum 51-year sentence. *Id*. ¶ 62. We noted that the petitioner was not afforded a meaningful sentencing hearing because throughout the sentencing proceedings, he represented himself and never offered any mitigating evidence or arguments on his own behalf. *Id*. ¶ 55. We further found troubling that at the resentencing hearing, which was conducted three years after trial, the trial judge was not in possession of the original PSI. *Id*. Accordingly, under this record, we concluded that because there was no evidence-based factual hearing, as contemplated by our supreme court's decision in *Harris*, 2018 IL 121932, ¶ 46, the petitioner was entitled to develop the record regarding his proportionate penalties claim in the circuit court. *Dobbey*, 2020 IL App (1st) 190118-U, ¶¶ 58-60. We therefore reversed and remanded for second-stage postconviction proceedings solely on this claim so that the petitioner could develop such a record and make a "substantial showing" of a proportionate penalties' violation. *Id*. ¶¶ 58, 62-63.

¶ 15    On remand for second-stage postconviction proceedings, the petitioner was initially represented by appointed counsel, who spent over two years gathering the record in the case. The petitioner was not brought to court during this time, even though on September 30, 2021, he filed a *pro se* motion seeking to represent himself. On December 7, 2021, appointed counsel and the circuit court agreed that counsel should finish acquiring the full record before the petitioner would be brought into court to address his *pro se* motion. On February 28, 2023, appointed counsel finally informed the court that he had successfully acquired the records, copied them to discs for the court and the State, and printed and indexed them for the petitioner.

¶ 16    On April 5, 2023, the petitioner appeared in court and confirmed that he wished to proceed *pro se*. In response to a series of questions from the circuit court, among other things, the petitioner indicated that he understood that he could get another 51-year sentence, and that he had a constitutional right to an appointed attorney. The petitioner stated that he had earned a GED but

had no legal training. The petitioner also stated that he understood that the case was remanded for resentencing and that he would need to present evidence. He informed the circuit court that he had already hired a mitigation expert, Dr. James Gabarino, to address how he was more akin to a juvenile than an adult such that he should receive a lighter sentence.

¶ 17    The circuit court found that the petitioner made a free, knowing and intelligent waiver of counsel, and granted the petitioner's motion to proceed *pro se*. The court then gave the petitioner a box containing about 2,000 pages of discovery, explaining that each page was numbered such that the circuit court could check if the petitioner was missing anything. The petitioner then requested a two-month continuance to review the documents, which the court granted. The petitioner then asked what would happen at the next court hearing, to which the judge responded "[Y]ou will be filing something, I imagine in your defense."

¶ 18    The court also informed the petitioner that the law was not yet clear on "young adults" and that our supreme court would be issuing relevant decisions ("*Williams* and *Moore* to be specific")[2] that could impact his case. The court therefore encouraged the petitioner to "pay attention to the case law between now and then."

¶ 19    Immediately before the next scheduled status hearing, on June 14, 2023, the State filed a motion to dismiss the petitioner's successive postconviction petition, arguing that he lacked cause for filing it. The motion specifically alleged that our supreme court's recent decision in *People v. Moore*, 2023 IL 126461 "overruled" this court's 2020 order remanding the cause for further postconviction proceedings. The motion further alleged that the petitioner failed to establish prejudice because his 51-year sentence for murder and attempted murder did not shock the moral sese of our community. In addition, the motion asserted that pursuant to our supreme court's recent

---

[2] The court merely named this decision and did not provide the petitioner with any citations.

decision in *People v. Wilson*, 2023 IL 127666, the sentencing proceedings in this case complied with the requirements of *Miller* in that the trial court already considered the PSI at the first sentencing hearing and took the petitioner's youth into account but nonetheless found that the petitioner was permanently incorrigible.

¶ 20    At the subsequent status hearing, the State summarized the claims in its motion to dismiss. The petitioner then requested the entire file from the Public Defender's Office and leave to file an amended petition. After a discussion with the circuit court about other *pro se* documents that he had recently filed (namely, a "motion for a speedy trial"), the petitioner again asked for an opportunity to amend his petition. The court granted the petitioner 90 days within which to file such an amendment. Upon the State's motion, however, the court clarified that the amended petition should only articulate the petitioner's position on his proportionate penalties claim in light of the recent supreme court's decisions cited by the State, but that it could not add any additional claims.

¶ 21    On September 13, 2023, the petitioner appeared in court with a written response titled "Petitioner's Combined Objections and Response to People's Motion to Dismiss the Petition for Post-Conviction Relief." Therein, the petitioner objected to the State's premature filing of its motion to dismiss before the petitioner had amended his *pro se* petition, originally filed in 2017, and before he completed his evaluation with the mitigation expert that he had already hired. The petitioner asserted that he was in the process of answering the evaluation questions requested by his hired mitigation expert, Dr. Gabarino, and requested another extension of time to be able to complete this evaluation and amend his petition with it.

¶ 22    The petitioner's response to the State's motion to dismiss further asserted that: (1) the State had forfeited its arguments regarding "cause and prejudice" because it never appealed our 2020

order remanding the case for second-stage proceedings; (2) *Moore* was inapplicable because it involved discretionary life sentences; (3) the petitioner's resentencing hearing was void because after his first sentence was vacated the resentencing judge did not have an updated PSI; and (4) the petitioner was entitled to an opportunity to develop the record regarding his as-applied proportionate penalties claim.

¶ 23    The circuit court rejected the petitioner's assertion that the State waived its arguments concerning cause and prejudice and that his resentencing was void. The court found that the decision in *Moore* "overruled" this court's order remanding for second-stage postconviction proceedings and that the petitioner could no longer meet the cause element of the cause-and-prejudice test. The circuit court also denied the petitioner's request for additional time to amend his claim to complete the evaluation with his mitigation expert finding that he had already been given 90 days to do so on the previous court date. The petitioner now appeals.

¶ 24                                    II. ANALYSIS

¶ 25    The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)) provides a three-stage process by which criminal defendants may address substantial violations of their constitutional rights that occurred at either trial or at sentencing. *People v. English*, 2013 IL 112890, ¶ 23. At the first stage, the circuit court independently reviews the petition and determines whether it is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2018); *People v. Tate*, 2012 IL 112214, ¶ 10; see also *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). If the petition is not summarily dismissed as frivolous or patently without merit, it advances to the second stage, during which counsel may be appointed and the petitioner must make a substantial showing of a constitutional violation. 725 ILCS 5/122-4 (West 2018); see also *People v. Domagala*, 2013 IL 113688, ¶ 33; *Edwards*, 197 Ill. 2d at 245-46. At this stage, the circuit court may not engage in

fact-finding or credibility determinations but must take the well-pleaded allegations in the petition that are not rebutted by the record as true. 725 ILCS 5/122-6 (West 2018); see also *People v. Ayala*, 2022 IL App (1st) 192484, ¶ 97; *People v. Dupree*, 2018 IL 122307, ¶ 29. If the petition makes a substantial showing of a constitutional violation it advances to the third stage, where the circuit court conducts an evidentiary hearing before deciding whether to grant relief. 725 ILCS 5/122-6 (West 2018); see also *Domagala*, 2013 IL 113688, ¶ 34; *Edwards*, 197 Ill. 2d at 246.

¶ 26    The Act is not a substitute for an appeal, but rather, a collateral attack on a final judgment. *People v. Clark*, 2023 IL 127273, ¶ 38. Accordingly, pursuant to section 122-3 of the Act, issues not presented in an original postconviction petition will be deemed "waived," and issues that have previously been raised and addressed on direct appeal will be barred under the doctrine of *res judicata*. *Id.* ¶ 38 (citing 725 ILCS 5/122-3 (West 2014)); see also *People v. Sanders*, 2016 IL 118123, ¶ 24. In proceedings under the Act, "the cause-and-prejudice test is 'the analytical tool that is to be used to determine whether fundamental fairness requires' an exception to section 122-3's statutory waiver" and the doctrine of *res judicata*. See *Clark*, 2023 IL 127273, ¶¶ 44-45 (citing *People v. Pitsonbarger*, 205 Ill. 2d 444, 462 (2002)); see also *People v. Griffin*, 2024 IL 128587, ¶ 66.

¶ 27    Consistent with these principles, the Act contemplates the filing of only one petition without leave of court and codifies the cause-and-prejudice test as the prerequisite to obtaining such relief. *People v. Lusby*, 2020 IL 124046, ¶ 27; *Edwards*, 2012 IL 111711, ¶ 23; see also 725 ILCS 5/122-1(f) (West 2018). Pursuant to section 122-1(f) of the Act, to obtain leave, the petitioner must demonstrate: (1) cause by identifying an objective factor that impeded his ability to raise the specific claim during his initial postconviction proceedings; and (2) prejudice stemming from that failure by demonstrating that the claim not raised in his initial postconviction proceedings so

infected the resulting conviction or sentence that it violated due process. 725 ILCS 5/122-1(f) (West 2018); see also *Pitsonbarger*, 205 Ill. 2d at 462.

¶ 28    "Both elements of the test must be met for a defendant to overcome section 122-3's waiver provision or to establish fundamental fairness for relaxing the *res judicata* doctrine." *Clark*, 2023 IL 127273, ¶ 47 (citing *Davis*, 2014 IL 115595, ¶ 14). "The legislature intended for the courts to make cause-and-prejudice determinations on the pleadings and not by evidentiary hearings." *Id*. (citing *People v. Smith*, 2014 IL 115946, ¶ 33). The circuit court does so by conducting "a preliminary screening" to determine whether the motion adequately alleges facts that make a *prima facie* showing of cause and prejudice as to each individual claim. *Id*. If the petitioner makes such a showing, " 'fundamental fairness requires that an exception be made to section 122-3 so that a claim raised in a successive petition may be considered on its merits.' " *Griffin*, 2024 IL 128587, ¶ 66 (quoting *Pitsonbarger*, 205 Ill. 2d at 459).

¶ 29    Here, the petition was dismissed at the second stage, and our review of that dismissal is *de novo*. *Dupree*, 2018 IL 122307, ¶ 29.

¶ 30    In the present case, for the following reasons, we find that the circuit court misconstrued the procedural posture of this case when it granted the State's motion to dismiss on the basis that the petitioner lacked cause to proceed with his proportionate penalties claim. We addressed this same issue five years ago, when we remanded the case for second-stage postconviction proceedings solely on the petitioner's proportionate penalties claim. We then found that the petitioner sufficiently stated both cause and prejudice with respect to this claim and remanded for second-stage postconviction proceedings to give him an opportunity to fully develop the record regarding why, at the time he committed the instant offense, he was more akin to a juvenile than an adult. See *Dobbey*, 2020 IL App (1st) 190118-U, ¶¶ 40, 58-60.

11

¶ 31    While not addressed by the parties, we find that the law-of-the-case doctrine limits our ability to relitigate this previously decided issue. *People v. Anderson*, 2015 IL App (2d) 14044, ¶ 27. Under the law-of-the-case doctrine, rulings made on points of law by a reviewing court are binding in the trial court upon remand and on subsequent appeals to the same reviewing court. *Id*. The doctrine settles for all subsequent stages of a suit the particular views of law announced by the court in a prior order or decision. *Id*. The rule is based upon the sound policy that, where an issue is once litigated and decided, the issue is settled for all subsequent stages of the suit. *McDonalds Corp. v. Vittorio Ricci Chicago, Inc*., 125 Ill. App. 3d 1083, 1086-87 (1984); see also *Petre v. Kucich*, 356 Ill. App. 3d 57, 63 (2005) (the purpose of the doctrine is "to protect settled expectations of the parties, ensure uniformity of decisions, maintain consistency during the course of a single case, effectuate proper administration of justice, and bring litigation to an end"). Accordingly, where "an appellate court reverses and remands the cause with a specific mandate, the only proper issue on a second appeal is whether the trial court's order is in accordance with th[at] mandate." *Petre*, 356 Ill. App. 3d at 63.

¶ 32    There are only two recognized exceptions to the application of the law-of-the-case doctrine: (1) when a higher reviewing court, subsequent to the lower court's decision, makes a contrary ruling on the same issue; and (2) when a reviewing court finds its prior decision was palpably erroneous. *Anderson*, 2015 IL App (2d) 14044, ¶ 27. Neither of those exceptions apply here.

¶ 33    While we acknowledge the decision in *Moore*, upon which the circuit court below relied, we find that it is not contrary to our 2020 ruling remanding the matter for second stage postconviction proceedings to permit the petitioner to fully develop the record regarding his youth-based proportionate penalties challenge to his mandatory 51-year sentence. In *Moore*, 2023 IL

126461, ¶¶ 12, 23, our supreme court held that two 19-year-old young adult offenders sentenced to discretionary life sentences could not rely on the unavailability of *Miller* to establish the requisite cause for their failure to raise their youth-based proportionate penalties challenges in their original postconviction proceedings because "*Miller* did not change the law applicable to discretionary life sentences imposed on young adults." *Id.* ¶ 38. Our supreme court further held that "long before *Miller*, Illinois law recognized the special status of juvenile offenders for purposes of applying the principles under the proportionate penalties clause," and that the evidence and arguments presented at the petitioners' sentencing hearings in that case established that the petitioners knew that "Illinois law recognized th[is] special status of young adults, especially those subject to adverse influences" for this purpose. *Id.* ¶¶ 41, 42.

¶ 34    *Moore*'s holding does not apply to the present circumstances. Unlike in *Moore*, where the petitioners were sentenced to discretionary life sentences, in the present case, the circuit court had no discretion to impose a sentence less than the mandatory minimum of 51 years. What is more, in the present case, unlike in *Moore*, neither of the petitioner's sentencing hearings reveal that the petitioner knew or argued to the sentencing judge that Illinois law recognized the special status of young adult offenders and that he should be treated differently because of his age. To the contrary, as we have already found in our 2020 order, because the petitioner offered no mitigating evidence or arguments at either sentencing hearing, and the PSI was not presented to the trial judge prior to the second one, in sentencing the petitioner to the minimum 51-year-sentence, the trial court was precluded from considering the petitioner's special status as a young adult offender. *Dobbey*, 2020 IL App (1st) 190118-U, ¶¶ 55-60. Under this record, *Moore* does not overrule our prior holding.

¶ 35    Instead, we find that this case is factually and procedurally more akin to *People v. House*, 2021 IL 125124. In *House*, which was also decided after our 2020 order remanding the matter to

13

the circuit court, our supreme court considered a second-stage dismissal of a 19-year-old offender's as-applied proportionate penalties' challenge to his mandatory natural life sentence for murder. *Id*. ¶¶ 7-9. Our supreme court reversed the appellate court's finding that the sentence was constitutionally disproportionate, holding that such a conclusion was premature because "no evidentiary hearing was held, and the trial court made no factual findings critical to determining whether the science concerning juvenile maturity and brain development applie[d] equally to young adults, or to petitioner specifically[.]" *Id*. ¶ 29. Our supreme court, therefore, remanded the matter for further second-stage proceedings to provide the petitioner an opportunity to develop the evidentiary record regarding his as-applied proportionate penalties' sentencing claim. *Id*. ¶¶ 31, 43.

¶ 36 Since then, our supreme court has continued to hold that young-adult offenders between ages 18 and 19 can make as-applied proportionate penalties challenges to mandatory life sentences so long as they can demonstrate through an adequate factual record that at the time they committed their crimes, their specific characteristics made them the functional equivalent of juveniles. See *Clark*, 2023 IL 12727387, ¶ 87 (holding that "emerging adult" defendants between 18 and 19 years-old are "not foreclosed" from raising as-applied proportionate penalties clause challenges to "mandatory" life sentences based on evolving science on juvenile maturity and brain development); See *People v. Hilliard*, 2023 IL 128186, ¶ 28 (reiterating that its prior precedent in *Harris* and *House* directed "the possibility of as-applied proportionate penalties clause postconviction challenges to young adults who received mandatory life sentences ***."). As our supreme court has explained, this requires young-adult offenders to do more than just rely on their age at the time they committed the crime; they must also develop the record to include specific allegations, which are not contradicted by the record, showing that because of their circumstances

they shared certain behavioral characteristics with juvenile offenders. *People v. Williams*, 2024 IL 127304, ¶¶ 31-36.

¶ 37    In the present case, this is exactly what the petitioner was attempting to do before the circuit court. When we remanded the matter in 2020, we found that the 19-year-old petitioner received a mandatory "*de facto* life [sentence] without the trial court's ability to consider any mitigating factors or the requisite goal of rehabilitation," because even though he now alleged that his poverty, drug abuse, gang involvement beginning at age 13, and subsequent harsh life on the streets, impacted his emotional development, "[t]he record [was] devoid of any evidence about the evolving science and its impact on [his particular] case" (*Dobbey*, 2020 IL App (1st) 19-0118-U, ¶¶ 54, 57). Accordingly, we held that the petitioner was entitled to develop the record regarding his as-applied constitutional challenge. *Id.*; see also *House*, 2021 IL 125124, ¶ 32 ("Because we have determined that the record in this case requires further development, we remand the cause to the circuit court for second-stage postconviction proceedings.").

¶ 38    In dismissing the petition without giving the petitioner an opportunity to develop the record, as we had explicitly instructed it to do, the circuit court directly ignored our mandate. In this respect, we are troubled by the court's refusal to grant the petitioner more than 90 days to amend his petition to include an opinion from his already hired mitigation expert, Dr. Gabarino, especially after the petitioner informed the court that he was in the process of answering Dr. Gabarino's evaluation questions. We note that prior to permitting the petitioner to represent himself, the court indulged appointed postconviction counsel for over two years in counsel's simple task of collecting and indexing the record on appeal. We therefore fail to see why the incarcerated petitioner should have been entitled to less time to complete his evaluation with his mitigation expert, so that he could attach that evaluation to his amended petition, particularly since

our supreme court has signaled that such evidence is a prerequisite to a successful as-applied proportionate penalties' claim. See *Williams*, 2024 IL 127304, ¶¶ 31-36.

¶ 39    For these reasons, we conclude that the circuit court erred in dismissing the petition on the basis that *Moore* "overruled" this court's 2020 order remanding the petitioner's proportionate penalties claim for second-stage postconviction proceedings. We further find that the circuit court abused its discretion by not granting the petitioner more time to amend his petition to develop a full record regarding the merits of this claim. See 725 ILCS 5/122-5 (West 2018) (the Act grants the court discretion to allow amendments of postconviction petitions "as shall be appropriate, just and reasonable and is generally provided in civil cases."); *People v. Brown*, 226 Ill. App. 3d 711, 716 (2002) ("A circuit court abuses its discretion if it refuses to allow a plaintiff to amend his complaint when a cause of action can be stated if the complaint is amended").

¶ 40                            III. CONCLUSION

¶ 41    Accordingly, we reverse the circuit court's dismissal of the petition and remand for further second-stage postconviction proceedings with the following instructions before a new judge. See *People v. Serrano*, 2016 IL App (1st) 133493, ¶ 45 ("Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994) gives a reviewing court, in its discretion, the power to reassign a matter to a new judge on remand."). On remand, the petitioner is permitted to amend his successive petition solely: (1) to include the opinion of his mitigation expert; and (2) provide any additional argument and/or evidence in support of his position that he was more akin to a juvenile than an adult at the time he committed the instant crime. The circuit court is then instructed to evaluate the amended petition under the "substantial showing" standard.

¶ 42    Reversed and remanded with instructions.

¶ 43    JUSTICE LAVIN, dissenting:

16

¶ 44    I abide by my original dissent in this case, as I would have affirmed the circuit court's judgment denying defendant leave to file his successive postconviction petition. See *People v. Dobbey*, 2020 IL App (1st) 19-0118-U. I do not believe defendant's petition presents a legally cognizable claim or meets the high bar needed to advance as a successive petition. See *id.*; see also *People v. Clark*, 2023 IL 127273, ¶ 97. Indeed, such petitions are highly disfavored and allowed only in very limited circumstances. *People v. Montanez*, 2023 IL 128740, ¶ 73.

¶ 45    In addition, I believe recent supreme court case law runs contrary to the majority's prior decision for several reasons and warrants affirming the dismissal of this case. See *People v. Anderson*, 2015 IL App (2d) 140444, ¶ 27. First, relevant to my prejudice analysis is *People v. Hilliard*, 2023 IL 128186, which recently rejected the defendant's proportionate penalties challenge to the same mandatory 25-year firearm enhancement to which defendant was subject. In *Hilliard*, the defendant was a young adult offender (age 18) when he committed attempted murder with a firearm. The court held the defendant could not overcome the presumption that the enhancement was constitutional as-applied.

¶ 46    Among the cited reasons, the court noted that the new juvenile sentencing laws (730 ILCS 5/5-4.5-105 (West 2024)), giving courts the discretion about whether to apply the enhancement, were not retroactive and applied only to *juveniles*. The court observed, "[t]he distinction between a juvenile and adult remains significant." *Hilliard*, 2023 IL 128186, ¶ 39. The court added that the more lenient parole provisions for young adults under 21 also were not retroactive. See 730 ILCS 5/5-4.5-115 (West 2024). The court held that this new sentencing law merely reflected a "policy change," and that the 25-year enhancement was not itself "abhorrent to the community's moral standards." *Id.* ¶ 39. *Hilliard* further considered that the defendant in that case chose to fire multiple close-range shots at the victim without provocation in an attempt

17

to kill him. It concluded the defendant's 40-year sentence was not even arguably cruel, degrading or disproportionate to the offense as to shock the moral sense of the community. *Id.* ¶ 40. This analysis buttresses my conclusion that defendant's 51-year sentence also did not shock the community's moral sense, but was proportionate. See *People v. Dobbey*, 2020 IL App (1st) 19-0118-U, ¶ 11 (dissent); see also *People v. White*, 2025 IL 129767, ¶ 43 (finding the sentence proportionate). He received the minimum for murder (20 years) and attempted murder (6 years) and was subject to the 25-year mandatory firearm enhancement upheld in *Hilliard*, as well as consecutive sentencing provisions.[3]

¶ 47    Also relevant to my prejudice analysis is *People v. Wilson*, 2023 IL 127666. There, the supreme court held that where the defendant received a *Miller*-compliant sentencing hearing, he could not establish prejudice for purposes of filing a successive postconviction petition. Although *Wilson* decided an eighth amendment claim, I believe the holding applies equally to defendant's proportionate penalties claim now before us. I already found defendant's sentence was *Miller*-compliant. See *Dobbey*, 2020 IL App (1st) 19-0118-U, ¶ 16. For the foregoing reasons, defendant cannot establish prejudice.

¶ 48    Second, under recent supreme court case law, defendant has failed to establish cause for filing his successive petition. He has not shown that some objective factor external to the defense impeded his effort to raise his proportionate penalties claim in an earlier proceeding. See 725 ILCS 5/122-1(f)(1) (West 2024); *People v. Moore*, 2023 IL 126461, ¶ 40 (noting, *Miller* "does not provide cause for a young adult offender to raise a claim under the proportionate penalties clause"); *Clark*, 2023 IL 127273, ¶¶ 61, 88, 93-94 (noting, "the *Miller* line of cases does not

---

[3]Courts have held that consecutive sentencing determines only the manner in which a defendant will serve sentences for multiple offenses but does not constitute an increase in penalty implicating the proportionate penalties provision. *People v. Phelps*, 211 Ill. 2d 1, 14 (2004); *People v. Hawkins*, 409 Ill. App. 3d 564, 573-74 (2011); see also *People v. Wilson*, 2019 IL App (4th) 170570-U, ¶¶ 36-39.

satisfy the 'cause' prong of the cause-and-prejudice test for raising a proportionate penalties claim in a successive postconviction petition"); *Hilliard*, 2023 IL 128186, ¶ 27 (noting *Thompson* and *Harris* only addressed "the possibility of a defendant raising a *Miller*-based challenge with respect to *mandatory* life sentences in *initial* postconviction petitions" (emphasis in original)). In interpreting the supreme court's recent decision in *Moore*, this court has concluded that young adult offenders with mandatory life sentences cannot establish cause to raise *Miller*-based proportionate penalties claims in successive postconviction petitions. *People v. Horshaw*, 2024 IL App (1st) 182047-B, ¶¶ 58-59, 62-63, and cases cited therein; see also *People v. Brown*, 2023 IL App (1st) 221825, ¶ 12 (noting, the defendant could not establish cause as to his 30-year sentence). This also supports the circuit court's judgment dismissing the case.

¶ 49    I therefore respectfully dissent.