2026 IL App (1st) 240342-U

SECOND DIVISION
February 10, 2026

No. 1-24-0342

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | 12 CR 18113 |
| | ) | |
| SHELLEY GASTON, | ) | Honorable |
| | ) | Carl B. Boyd, |
| Petitioner-Appellant. | ) | Judge Presiding |

JUSTICE ELLIS delivered the judgment of the court.
Justices McBride and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*: Vacated and remanded. Neither counsel's Rule 651(c) certification nor record as a whole demonstrated that postconviction counsel complied with Rule 651(c).

¶ 2    Petitioner Shelley Gaston was convicted of murdering his former girlfriend and sentenced to 53 years in prison. After an unsuccessful direct appeal, he filed a postconviction petition. The petition advanced to the second stage of proceedings, where counsel was appointed. After several years and continuances, counsel filed a supplemental addendum to Gaston's *pro se* petition and an Illinois Supreme Court Rule 651(c) certificate, attesting that she adequately reviewed the relevant portions of the trial record.

¶ 3    The circuit court dismissed the petition. But because that certificate is unclear on what

counsel reviewed, her Rule 651(c) certificate does not assure us that counsel conducted the necessary review required by the rule, nor does the record as a whole provide that assurance. We vacate the judgment and remand this matter for further second-stage proceedings.

¶ 4                                    BACKGROUND

¶ 5      Because this appeal pertains only to Gaston's postconviction proceedings, we briefly discuss the underlying crime and conviction. A more detailed recitation of the crime is in our order affirming his conviction and sentence on direct appeal. *People v. Gaston*, 2018 IL App (1st) 152990-U, ¶¶ 3-22.

¶ 6      In September 2012, police found Erika Ellison, Gaston's estranged girlfriend, shot multiple times in a parking lot in an apartment complex in Hazel Crest. Ellison died shortly thereafter, and police quickly identified Gaston as the primary suspect, since he had been seen with Ellison just before the shooting. Police also found gunshot residue inside Gaston's van. A jury convicted Gaston of first-degree murder and found that he personally discharged a firearm that proximately caused Ellison's death. The court sentenced Gaston to 53 years in prison.

¶ 7      In April 2019, Gaston filed a *pro se* postconviction petition, alleging that trial and appellate counsel made several errors in the initial proceedings. He also made several allegations of prosecutorial misconduct or error, as well as some evidentiary claims. The petition seemed to fall by the wayside in the circuit court; about six months after it had been filed, in October 2019, the court docketed the petition and appointed counsel to represent Gaston. After multiple years of continuances, postconviction counsel filed a supplemental petition adding a new sentencing claim based on a violation of the single-subject rule in the Illinois Constitution but did not amend or withdraw any of Gaston's *pro se* claims.

¶ 8      Counsel also filed a certificate under Illinois Supreme Court Rule 651(c) (eff. July 1,

2017), attesting that she reviewed the relevant portions of the trial record to adequately address the claims in Gaston's post-conviction petition. As the content of that certificate is the basis of this appeal, we will discuss it in more detail below.

¶ 9 The State moved to dismiss Gaston's *pro se* and supplemental petitions, arguing that his claims were either meritless or forfeited, as they were not raised on direct appeal. The court dismissed the petition. This appeal followed.

¶ 10 ANALYSIS

¶ 11 On appeal, Gaston focuses on the actions of his postconviction counsel. First, he argues that counsel's Rule 651(c) certificate is deficient because it fails to establish that counsel read the relevant portions of the record in this case, and the record does not otherwise demonstrate counsel's compliance with the rule. Second, Gaston claims that counsel performed unreasonably when she did not amend the claims in his petition to avoid their forfeiture. Our review of both the second-stage dismissal and counsel's compliance with Rule 651(c) is *de novo*. *Urzua*, 2023 IL 127789, ¶ 28; *People v. Suarez*, 224 Ill. 2d 37, 41-42 (2007).

¶ 12 The Post-Conviction Hearing Act provides a three-stage process by which defendants may challenge their conviction or sentence on constitutional grounds. 725 ILCS 5/122(a)(1) (West 2022); *People v. Addison*, 2023 IL 127119, ¶ 17. At the first stage, a petitioner files a petition, often *pro se*. 725 ILCS 5/122-2.1(a)(2) (West 2022). If the petition states the gist of a constitutional violation, or it is not dismissed within 90 days after filing, the petition must be docketed and advanced to the second stage of proceedings. *Id*. § 122-2.1(a)(2).

¶ 13 At the second stage, the trial court appoints counsel for an indigent petitioner. *Id*. § 122-4. This statutory right to counsel is one of legislative grace; there is no constitutional right to the assistance of counsel in postconviction proceedings. *People v. Agee*, 2023 IL 128413, ¶ 37.

Because the right to counsel in postconviction proceedings is wholly statutory, petitioners are entitled only to the level of assistance provided by the Act, which our supreme court has defined as a "reasonable level of assistance[.]" *People v. Turner*, 187 Ill. 2d 406, 410 (1999).

¶ 14   To ensure that postconviction petitioners receive that reasonable level of assistance, Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) requires that postconviction counsel: (1) consult with the petitioner to ascertain his constitutional claims; (2) examine the record of the proceedings at trial; and (3) make any amendments to the *pro se* petition that are necessary to adequately present the petitioner's contentions. See *People v. Urzua*, 2023 IL 127789, ¶ 53. We require, at a minimum, that the record as a whole demonstrates "substantial compliance with the rule." *People v. Davis*, 156 Ill. 2d 149, 165 (1993).

¶ 15   Though Rule 651(c) requires a showing that postconviction counsel "has examined the record of the proceedings at trial," what the record must minimally show, by certificate or otherwise, is that postconviction counsel has examined *the parts of the record that form the basis of the postconviction petition*. *People v. Pendleton*, 223 Ill. 2d 458, 475-76 (2006) (though counsel may conduct broader examination of record and may raise additional issues, counsel is not required to review portions of record unrelated to claims in petition); *Davis*, 156 Ill. 2d at 165. Quite obviously, which parts of the trial record counsel must review to minimally comply with the rule thus depends on the claims the petition raises. *Davis*, 156 Ill. 2d at 164.

¶ 16   For example, if a petitioner's claims are only related to sentencing, then postconviction counsel need only review the sentencing record to satisfy Rule 651(c). See *People v. Valerio*, 2023 IL App (4th) 220500-U, ¶ 27 ("It would not have been necessary for counsel to examine the entirety of the trial proceedings in his preparation of the successive petition" that related only to sentencing). If the only matter in the postconviction petition relates to a prosecutor's pretrial,

*ex parte* conversation with a potential juror, then postconviction counsel need only review portions of the record relative to that claim—the transcript of the *voir dire* and the juror's affidavit. *Davis*, 156 Ill. 2d at 165. On the other hand, if a postconviction petition raises claims related to various exhibits (such as a photo of the lineup and the victim's credit card), the record must show that postconviction counsel reviewed those exhibits, and a showing that counsel reviewed the "transcripts and common-law record" but *not* the exhibits does not comply with Rule 651(c). *People v. Blanchard*, 2015 IL App (1st) 132281, ¶ 18.

¶ 17    So to determine what Rule 651(c) required here, we must review the contents of Gaston's *pro se* postconviction petition. Gaston alleged that: (1) trial counsel was ineffective for failing to pursue a motion to suppress evidence based on an illegal arrest; (2) trial counsel was ineffective for not presenting evidence of prosecutorial or police misconduct; (3) counsel was ineffective for failing to object to or cross-examine a police officer's eyewitness testimony; (4) the trial court erroneously allowed one witness to testify about a third-party conversation; and (5) the State made inappropriate comments in closing argument. Gaston also alleged that appellate counsel was similarly ineffective for not raising these errors on direct appeal.

¶ 18    That covers a lot of ground. Counsel would have been required to review, at a minimum, the transcript of all pretrial and trial proceedings and the common-law record of filings during those phases. See *People v. Bashaw*, 361 Ill. App. 3d 963, 968 (2005) (to comply with Rule 651(c), postconviction counsel would have to be "thoroughly conversant with the trial proceedings pertaining to trial counsel's alleged [trial] errors.").

¶ 19    Though the record as a whole must show compliance (or at least substantial compliance), the most common method of demonstrating compliance is postconviction counsel's filing of a certificate attesting to compliance. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). A proper Rule 651(c)

certificate creates a rebuttable presumption that counsel provided a reasonable level of assistance, absent an affirmative showing otherwise in the record. *Agee*, 2023 IL 128413, ¶ 43.

¶ 20    Here, Gaston's postconviction counsel's Rule 651(c) certificate attested to the following, with a particular focus, for our purposes, on paragraph 2:

> "1. I have consulted with petitioner, SHELEY [*sic*] GASTON, personally or by letter to ascertain his contentions of deprivations of constitutional rights;
>
> 2. I have reviewed the [*sic*] *any and/or all aspects* of the Records of the proceedings of this case, which *may* consist of Report of Proceedings; Common Law Records; Supplementals and Trial Exhibits; prior motions and any prior Mandates *provided to me* concerning Indictment Number 12CR1811301.
>
> 3. I have examined petitioner's *pro se* Petition for Post-Conviction Relief and as it adequately presents his claim of deprivation of constitutional rights.
>
> 4. I have filed A Supplemental Petition for Post-Conviction Relief to the pro se petition for post-conviction relief to clearly and adequately set forth the petitioner's claims of deprivation of his constitutional rights." (Emphases added.)

¶ 21    Gaston says the second paragraph fails to comply with the standards of Rule 651(c). Specifically, counsel's certification that she reviewed "any and/or all aspects" of the record, which "may" have consisted of various items "provided to" her, is insufficient to establish that counsel complied with the rule's mandate that she review the relevant portions of the record.

¶ 22    Gaston is correct that this certificate is insufficient to assure us that postconviction counsel "examine[d] as much of the transcript of proceedings as is necessary to adequately present and support those constitutional claims" raised by Gaston. *Davis*, 156 Ill. 2d at 164. Counsel never specified what she reviewed. As Gaston notes, whatever "may" have been part of

counsel's review also may *not* have been. Nor does counsel specify what was "provided" to her. And we struggle to give any form or structure or meaning to the amorphous reference to "any and/or all aspects" of the record.

¶ 23     Filling out this certificate is not an arduous task, nor is it meant to be. Neither Rule 651(c) nor the decisions interpreting it require an unreasonable amount of specificity. If counsel swears, for example, that she reviewed the transcript of proceedings, that would suffice—we have never required counsel to more specifically reference the particular parts of the transcript that are relevant to the claims in the post-conviction petition (say, the pretrial proceedings or a particular witness's testimony or the closing argument). Tell us you reviewed the transcript of proceedings, and we will trust that counsel, as an officer of the court, reviewed the relevant portions of that transcript at a minimum.

¶ 24     We do not require specific language or buzzwords in a Rule 651(c) certificate; we can overlook a typographical error; we do not demand prose worthy of Shakespeare. We do, however, require this humble task of counsel: tell us what parts of the record you did, in fact, review. Do not tell us what you "may" have reviewed. Do not give us a range and tell you reviewed "any and/or all aspects" of the documents within that range. Do not qualify the documents within that range—only those "provided to" you—in a way that leaves us guessing.

¶ 25     The State argues that "petitioner fails to identify what—if any—relevant documents counsel failed to seek out or review." But it's postconviction counsel's obligation, in the first instance, to tell us what she *did* review. Then a petitioner, and this court, can compare what counsel swore she *did* review with what she *should have* reviewed, based on the content of the postconviction petition. If there is a reasonable match, we have substantial compliance. But the analysis ends before it starts if, as here, the certification is so confusing that we cannot discern

what postconviction counsel reviewed in the first place.

¶ 26     Likewise, the State claims that "petitioner asks this Court to draw an unsupported negative inference from counsel's certification language." But we are not drawing any inferences at all. We are simply reading counsel's description of what she reviewed and coming away with no clear idea of what it said.

¶ 27     All the hedging and qualifying in this certificate leaves us with no clear, or even reasonably clear, idea of what counsel reviewed and what she did not. This certificate is insufficient. So the rebuttable presumption of compliance that normally arises from counsel's certificate, see *Agee*, 2023 IL 128413, ¶ 43, does not attach here.

¶ 28     But that does not complete our analysis. As noted above, it is the *record as a whole* that determines (at least substantial) compliance with the rule. The Rule 651(c) certificate is typically the shortest and cleanest path to that end, but the record may support a finding of compliance even if the certification is insufficient (or if none is filed at all).

¶ 29     Take, for example, *Davis*, 156 Ill. 2d at 152, where the petitioner alleged in his *pro se* petition that the prosecutor had a telephone conversation with someone who later served as a juror in the petitioner's trial. At the second stage, postconviction counsel filed a Rule 651(c) certificate similar to the one here: counsel swore nothing more than he had " 'examined the record of proceedings at the trial *which were available to [him]* for an adequate presentation of the Petitioner's contentions on appeal.' " *Id.* (emphasis added).

¶ 30     But our supreme court found substantial compliance, as postconviction counsel had amended the postconviction petition and added two exhibits—the transcript from the *voir dire* and an affidavit from the juror in question. *Id.* at 165. And on appeal, the petitioner could not identify any other portion of the trial record that would have been relevant to his claim. *Id.* The

record, in other words, demonstrated that counsel reviewed all relevant parts of the record, whatever her Rule 651(c) certificate said or didn't say.

¶ 31    Likewise, in *People v. Tillery*, 2022 IL App (1st) 200045, ¶ 5, cited here by the State, the postconviction petition alleged, among other claims, that trial counsel was ineffective for failing to "call certain witnesses at trial" and "conduct an investigation prior to trial." Postconviction counsel's Rule 651(c) certificate swore only that counsel reviewed "the transcript of his bench trial and sentencing." *Id.* ¶ 7. But the record as a whole showed compliance, because postconviction counsel told the court that she reviewed trial counsel's "trial file" and tried to investigate and interview these witnesses but ran into a lack of cooperation. *Id.* ¶¶ 9, 33.

¶ 32    The record here does demonstrate that postconviction counsel filed a supplemental petition, but that petition was a constitutional challenge to the truth-in-sentencing law under which Gaston was sentenced. No review of the transcript of the proceedings would be necessary to argue that a state sentencing law violated the single-subject rule of the Illinois Constitution. So that point proves nothing.

¶ 33    The State's stronger record-related argument is that postconviction counsel asked the court to order the circuit court clerk to "produce the transcripts consisting of the common law records and report of proceedings, as well as any supplemental records" and turn them over to postconviction counsel. That's a fine start, but we don't know which documents counsel ultimately received and, more to the point, even if we did, we still do not know which parts of the record she *reviewed*.

¶ 34    We find nothing in the record that shores up the deficiencies in postconviction counsel's Rule 651(c) certificate. As such, we vacate the dismissal of the postconviction petition. We remand to the trial court to allow postconviction counsel to comply with Rule 651(c). Upon such

compliance, we direct the circuit court to reconsider the postconviction petition. See *Blanchard*, 2015 IL App (1st) 132281, ¶ 19.

¶ 35                                    CONCLUSION

¶ 36    The judgment of the circuit court is vacated. The cause is remanded for second-stage proceedings consistent with this Order.

¶ 37    Vacated and remanded.