2026 IL App (1st) 240125-U

SECOND DIVISION
May 12, 2026

No. 1-24-0125

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | 01 CR 05828/01 |
| | ) | |
| LENIN PEREZ, | ) | Honorable |
| | ) | Lawrence E. Flood |
| Petitioner-Appellant. | ) | Judge Presiding |

_____

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Van Tine and Justice D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*: Vacated and remanded. Postconviction counsel failed to comply with Rule 651(c).

¶ 2    Lenin Perez, who was convicted of first-degree murder in 2003, appeals from the dismissal of his postconviction petition at the second stage of proceedings. As we agree with Perez that postconviction counsel provided unreasonable assistance, we vacate and remand.

¶ 3                              BACKGROUND

¶ 4    In 2001, Perez, along with his cousins Robert and Raphael, was convicted of first-degree murder in connection with a drive-by shooting that left Luis Delgado dead. At the time of the shooting, Lenin Perez was 17 years old.

¶ 5    At trial, Jose Ramirez testified that he, Delgado, and Jascinia Santiago were driving

around Chicago in the early morning hours of February 9, 2001. While the trio was stopped at a gas station, a van sped through the parking lot. Ramirez noticed that one of the windows on the left side of the fan had duct tape on it. Ramirez and his friends continued to drive around, but about 15 to 20 minutes later, they saw the same van following them. Delgado eventually pulled the car over, and the van pulled up alongside the car and pinned them in. Someone in a black mask, wearing black gloves, then stuck a gun out of the passenger window and fired shots at the car, killing Delgado.

¶ 6     Police officer Jaime Torres responded to a call of shots fired nearby. He saw two men—whom he later identified as Perez and Roberto—run into a nearby construction crawlspace. Both had guns in their hands but dropped them after Torres told them to. Perez was wearing black knit gloves when he was arrested, and police found a black mask with Perez's DNA on it.

¶ 7     A jury convicted Perez of first-degree murder. At sentencing, the State offered a written statement from the victim's mother as evidence in aggravation, while Perez offered more than a dozen letters from friends and family members. Neither party called any witnesses to testify; rather, both sides relied on evidence in Perez's pre-sentence investigation report and argument.

¶ 8     Perez's counsel argued that the shooting stemmed from Perez seeking retaliation for his brother's death. That death, counsel argued, caused Perez emotional anguish and precipitated Delgado's death—even though it turned out that Delgado had nothing to do with the murder of Perez's brother. Counsel also argued that Perez was a "young man" susceptible to influence when "he gets together with the wrong group of people."

¶ 9     Perez did not speak at his sentencing.

¶ 10    In imposing Perez's sentence, the court considered the presentence investigation report, the letters from Perez's family, the statement from the victim's mother, and other mandatory

factors in aggravation and mitigation. The court believed that Perez was the shooter. The court considered the drive-by shooting to be "worse than if you were in Baghdad and not only killing people, but putting others in immediate danger[.]" The court lamented that Perez and his co-defendants had decided "to make this a war zone to the highest degree imaginable, act against the peace and dignity of the citizens in that area, the citizens of Chicago." But the court was also mindful that Perez had no criminal background and that "his state of mind" was affected by the "unpunished murder of his brother, albeit not by the victim in this case."

¶ 11   The court sentenced Perez to 35 years in prison. Perez appealed his conviction and sentence; this court affirmed both in an unpublished order. *People v. Perez*, No. 1-03-2736 (2005) (unpublished order under Illinois Supreme Court Rule 23).

¶ 12   More than 15 years later, on January 13, 2021, Perez filed a *pro se* postconviction petition. Relevant to this appeal, he raised an as-applied challenge to the "Truth in Sentencing Act" that required him to serve 100% of his sentence. See 730 ILCS 5/3-6-3(a)(2)(i) (West 2022). He claimed this law violated the eighth amendment to the U.S. Constitution and the Illinois Constitution's proportionate-penalties clause as applied to him because it did not permit him to demonstrate he was capable of rehabilitation. In August 2021, the circuit court advanced the petition to the second stage because it had lingered more than 90 days. See 725 ILCS 5/122-2.1(a) (West 2022). Counsel was appointed for Perez.

¶ 13   Nearly two years later, on June 14, 2023, postconviction counsel filed a certificate of compliance with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). Counsel did not amend or supplement the postconviction petition.

¶ 14   The State moved to dismiss the petition, arguing that Perez's petition was untimely and meritless. Postconviction counsel did not file a response to the motion to dismiss or otherwise

amend the petition to address the State's arguments.

¶ 15      At oral argument, postconviction counsel all but conceded that the supreme court decision in *People v. Buffer*, 2019 IL 122327, defeated defendant's sentencing challenges:

> "At the time that Mr. Perez filed his postconviction, that was very early, beginning of the year, January of 2021. At the time, the higher courts had not made a determination on the arguments as pertaining to the *Buffer* issue as far as his age being 17. So at the time when he initially filed this petition, those issues were indeed—had more room for arguability [*sic*].
>
> Your Honor, as far as Mr. Perez's argument that the Truth in Sentencing Act which has allowed for him to be sentenced at 35 years does not give Mr. Perez any room in which to be able to return himself to a useful citizen, I do understand Mr. Perez's argument of trying to establish that based off of being held accountable for the actions of the codefendant, his young age, and seeking an opportunity to be able to return to society. I do understand Mr. Perez's argument as far as all of the claims that he has made.
>
> Defense does understand, and unfortunately since the filing of this postconviction, the court has—the higher courts have indeed addressed a number of these issues, if not really all of these issues, and at this time, your Honor, the Defense is arguing on behalf of Mr. Perez that his postconviction be granted and he be allowed the opportunity to be able to be resentenced or to receive a new trial. Thank you very much, your Honor."

¶ 16      The court dismissed Perez's petition. Relevant here, the court noted that Perez's sentence of 35 years was not a *de facto* life sentence and, as such, Perez "fails to demonstrate any basis for

this Court to consider his sentence unconstitutional." The court also chided Perez for failing "to provide any support for the statute's unconstitutionality as applied to him. Petitioner does not attempt to showcase his greater rehabilitative potential or that his sentencing contained uniquely unconstitutional circumstances." Perez now appeals.

¶ 17                                    ANALYSIS

¶ 18    Perez argues that (1) his petition alleged a substantial violation of his constitutional rights and (2) if not, postconviction counsel provided unreasonable assistance in failing to amend it. As we explain below, we disagree with his first argument but agree with his second.

¶ 19                            I. Dismissal of Petition

¶ 20    The Post-Conviction Hearing Act provides a mechanism for a defendant to claim his conviction or sentence was the result of a substantial denial of his constitutional rights. 725 ILCS 5/122-1 *et seq.* (West 2022); *People v. English*, 2013 IL 112890, ¶ 21. The Act operates in three stages. *Id.* ¶ 23. At the first stage, the court will advance the petition to the second stage, with the appointment of counsel, as long as the petition states the "gist" of a constitutional violation. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). A court will also advance the petition, as here, if the court fails to rule on it within 90 days. 725 ILCS 5/122-2.1(a) (West 2022). At the second stage, now with appointed counsel, the petition must allege a substantial violation of the petitioner's constitutional rights. *People v. Quezada*, 2024 IL App (2d) 210076-B, ¶ 12.

¶ 21    Perez's handwritten petition claimed that the state law requiring that he serve 100% of his sentence violated the eighth amendment to the United States Constitution and the proportionate-penalties clause of the Illinois Constitution. See U.S. Const. amend. VIII; Ill. Const. 1970, art. I, § 11. The petition is largely based on *Miller v. Alabama*, 567 U.S. 460, 470 (2012), which held that mandatory life sentences for juveniles violated the eighth amendment.

¶ 22    The Supreme Court based its holding on the evolving science regarding youthful offenders and their attendant characteristics, such as impulsivity and lack of judgment, that render them less culpable and more likely to be capable of rehabilitation. *Id*. Simply put, *Miller* holds that a court must consider the juvenile's youth and its attendant characteristics before imposing a life sentence. *Id*.; *People v. Buffer*, 2019 IL 122327, ¶ 27.

¶ 23    The petition here, though handwritten by a *pro se* offender, quite eloquently explained *Miller* and its progeny and the evolving science on youthful offenders. The petition alleged that the trial court did not adequately consider his youth and the attendant circumstances in imposing sentence. But the petition had problems, one potentially curable and the other one fatal.

¶ 24    The fatal one: as the circuit court noted, Perez could not assert a true *Miller* claim under the eighth amendment because he did not receive a *de facto* life sentence—his sentence was 35 years. Only sentences of over 40 years qualify as *de facto* life sentences entitled to *Miller*'s protection. *Buffer*, 2019 IL 122327, ¶ 41. There was nothing postconviction counsel could do to salvage the eighth-amendment claim.

¶ 25    The other problem is that the petition did not adequately raise an as-applied challenge under the proportionate-penalties clause because it did not home in on the specifics of Perez himself—the facts of his case, his specific sentence, and his specific youthful characteristics. In the court's words, Perez did "not attempt to showcase his greater rehabilitative potential or that his sentencing contained uniquely unconstitutional circumstances."

¶ 26    To be sure, the petition alleged that the court failed to take his youthful characteristics into account. That would be enough for a *Miller* claim under the eighth amendment, if *Miller* had been applicable. But a proportionate-penalties claim is not, and never has been, a *Miller* claim. See *People v. Moore*, 2023 IL 126461, ¶ 42; *People v. Clark*, 2023 IL 127273, ¶ 61; *People v.*

*Dorsey*, 2021 IL 123010, ¶ 74.

¶ 27 Relevant here, a sentence violates the proportionate-penalties clause if it "shock[s] the moral sense of the community." *People v. Sharpe*, 216 Ill. 2d 481, 503-04, 517 (2005). It might shock the conscience because a lengthy sentence does not match the defendant's minor level of culpability. See *People v. Leon Miller*, 202 Ill. 2d 328 (2002). The defendant's youth could certainly play a role as well. See *Clark*, 2023 IL 127273, ¶ 87. It might be a combination of both. See *People v. House*, 2021 IL 125124, ¶ 9.

¶ 28 But a proportionate-penalties claim must do more than simply say that the court failed to take certain factors into account or that, generally speaking, recent science indicates that juveniles are more impulsive and less blameworthy. Those facts, alone, surely do not shock the moral sense of the community. See *People v. Williams*, 2024 IL 127304, ¶¶ 32-39 (as-applied proportionate-penalties claims, even to state "gist" of claim at first stage, must allege specific facts and circumstances of individual and not merely rely on brain research and legal principles).

¶ 29 The circuit court correctly ruled that the petition failed to state an as-applied challenge to his sentence under the proportionate-penalties clause. The petition was properly dismissed.

¶ 30                                     II. Unreasonable Assistance

¶ 31 Though the circuit court did not err in dismissing the petition, our discussion above brings us to Perez's second point of error. He argues that postconviction counsel provided unreasonable assistance in failing to amend his proportionate-penalties argument to include specifics about the case and Perez's unique traits and circumstances.

¶ 32 Because the postconviction right is a creature of statute, the right to counsel is likewise statutory and not constitutional. *People v. Porter*, 122 Ill. 2d 64, 73 (1988). A petitioner is entitled only to the reasonable assistance of counsel. *People v. Huff*, 2024 IL 128492, ¶ 21.

¶ 33 Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) governs postconviction counsel's duties. The record must show that counsel (1) met with the petitioner to ascertain his claims of constitutional deprivation; (2) examined at least the parts of the record relevant to the petition's claims of error; and (3) made any amendment to the petition necessary to an adequate presentation of petitioner's claims. *Id*. At a minimum, the record as a whole must demonstrate "substantial compliance with the rule." *People v. Davis*, 156 Ill. 2d 149, 165 (1993).

¶ 34 Counsel is not required to advance frivolous claims. *Huff*, 2024 IL 128492, ¶ 22. Nor is counsel required to add new claims to those in the original petition. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006); *Davis*, 156 Ill. 2d at 164. But counsel must shape the petition's claims into proper legal form. *People v. Addison*, 2023 IL 127119, ¶ 20.

¶ 35 That means, among other things, that if a petition is procedurally defective, counsel must fix that defect if possible to do so in good faith. For example, if the petition is untimely, counsel must "amend an untimely *pro se* petition to allege any available facts necessary to establish that the delay was not due to the petitioner's culpable negligence." *People v. Perkins*, 229 Ill. 2d 34, 49 (2007). If a claim was forfeited at trial and/or on direct appeal, counsel must amend the petition to frame the claim as one of ineffective assistance of trial and/or appellate counsel for failing to raise it earlier. *Williams*, 2024 IL 127304, ¶ 20; *Addison*, 2023 IL 127119, ¶ 23.

¶ 36 Here, while Perez's eighth-amendment claim was beyond saving, his proportionate-penalties claim suffered only from a lack of detail. Postconviction counsel made no amendments to allege facts about Perez himself, the details of his case, and the like, that a proper as-applied proportionate-penalties claim must contain. *Williams*, 2024 IL 127304, ¶¶ 32-39. Absent an amendment to include such additional information, the petition never stood a chance.

¶ 37 That is where counsel's Rule 651(c) certificate comes in. See Ill. S. Ct. R. 651(c) (eff.

July 1, 2017). As noted, the record as a whole must show counsel's substantial compliance with Rule 651(c) (*Davis*, 156 Ill. 2d at 165), but the shortest path, which most lawyers choose, is to file a certificate attesting to compliance. When counsel validly certifies compliance with Rule 651(c), we presume that counsel performed reasonably absent affirmative proof to the contrary in the record. *Huff*, 2024 IL 128492, ¶ 22.

¶ 38    So if counsel fails to amend a petition that clearly needed it, we will presume from a valid Rule 651(c) certificate that counsel believed she had no good-faith basis to amend the petition. See *id.* ¶ 24 ("It is presumed from the lack of an amendment that there were none to be made."); *Perkins*, 229 Ill. 2d at 51-52 (though postconviction counsel failed to amend petition to address timeliness problem, supreme court presumed from valid Rule 651(c) certificate that counsel had no valid excuse to raise for delay in filing); *People v. Boyce*, 2026 IL App (1st) 240573-U, ¶ 25 (counsel did not perform unreasonably in failing to amend claims of prosecutorial misconduct: "We assume, based on counsel's Rule 651(c) certificate, that counsel had no information to provide—no information he could provide in good faith, at least—to fill in those gaps.").

¶ 39    But all of this assumes a valid Rule 651(c) certificate. Perez argues that counsel's certificate here was invalid. We agree.

¶ 40    Again, counsel must certify that she conferred with Perez, that she reviewed at least those portions of the record relevant to the claims in the petition, and she made whatever amendments were necessary to advance those claims. Counsel's Rule 651(c) read in relevant part as follows:

> "1. I have consulted with the petitioner, Lenin Perez, personally or by letter to ascertain his contentions of deprivations of constitutional rights.
>
> 2. I have review [*sic*] *the any and/or all aspects* [*sic*] of the Record of proceeding of this case, which *way* [*sic*] consist of Report of Proceedings; Common Law

Records; Supplemental and Trial Exhibits; Prior Motions and any prior Mandates *provided to me* concerning Indictment Number 01CR0582801.

3. I have examined petitioner [*sic*] Pro Se Petition for Post Conviction Relief and as it adequately present [*sic*] his claim of deprivation of constitutional rights.

4. I have not yet filed any Supplemental Petition of Post Conviction Relief to the Pro Se Petition for Post Conviction Relief to clearly and adequately set forth the petitioner's claim of deprivation of his constitutional rights." (Emphases added.)

¶ 41 We recently held that a Rule 651(c) certificate nearly identical to this one—other than using the word "may" in paragraph 2 where counsel, here, inadvertently typed "way"—did not satisfy the requirements of the rule. See *People v. Gaston*, 2026 IL App (1st) 240342-U, ¶ 34. What we said there is true here as well:

"[T[his certificate is insufficient to assure us that postconviction counsel 'examine[d] as much of the transcript of proceedings as is necessary to adequately present and support those constitutional claims' raised by [petitioner]. *Davis*, 156 Ill. 2d at 164. Counsel never specified what she reviewed. As [petitioner] notes, whatever 'may' have been part of counsel's review also may not have been. Nor does counsel specify what was 'provided' to her. And we struggle to give any form or structure or meaning to the amorphous reference to 'any and/or all aspects' of the record.

\*\*\*

We do not require specific language or buzzwords in a Rule 651(c) certificate; we can overlook a typographical error; we do not demand prose worthy of Shakespeare. We do, however, require this humble task of counsel: tell us what parts of the record you did, in fact, review. Do not tell us what you 'may' have reviewed. Do not give us a range and

tell us you reviewed 'any and/or all aspects' of the documents within that range. Do not qualify the documents within that range—only those 'provided to' you—in a way that leaves us guessing." *Id*. ¶¶ 22, 24.

¶ 42      As in *Gaston*, the Rule 651(c) certificate here is invalid and does not entitle counsel to the rebuttable presumption that she provided reasonable assistance.

¶ 43      Still, if the record otherwise demonstrates at least substantial compliance with the rule, we may find reasonable assistance. See *Davis*, 156 Ill. 2d at 165 (counsel's statements to court and attachment of exhibits to petition demonstrated that counsel reviewed relevant parts of record); *People v. Tillery*, 2022 IL App (1st) 200045, ¶ 33 (counsel told court she tried to interview witnesses relevant to petition's claims but was unsuccessful).

¶ 44      Unfortunately, if anything, a deeper review of the record reveals the *lack* of reasonable assistance. First and foremost, counsel's oral argument to the court all but conceded that our supreme court's *Buffer* decision dealt a fatal blow to Perez's sentencing claims, when in fact that was only partly correct. True, by setting the minimum sentence necessary to constitute a *de facto* life sentence at over 40 years, *Buffer* scotched Perez's *Miller* claim under the eighth amendment.

¶ 45      But *Buffer* did not affect Perez's proportionate-penalties claim. The fact that Perez had a 35-year sentence did not prevent him from asserting that his sentence shocked the moral sense of the community. A defendant, juvenile or otherwise, has always been able to challenge a sentence of any length under the proportionate-penalties clause. See *Clark*, 2023 IL 127273, ¶ 61 ("[L]ong before *Miller*, Illinois law recognized the special status of juvenile offenders for purposes of applying the principles under the proportionate penalties clause.").

¶ 46      The record thus affirmatively shows that the reason counsel did not amend the proportionate-penalties claim in the petition was not that she lacked anything to add but because

she misunderstood the law. That is not reasonable assistance.

¶ 47    Though we could stop there, counsel did not amend the petition to answer the State's argument that Perez's petition was untimely, either. Counsel has a duty, if possible in good faith, to amend the petition to answer an untimeliness argument. *Perkins*, 229 Ill. 2d 34, 49 (2007). Though we would presume, with a valid Rule 651(c) certificate, that counsel had no reasonable excuse to give (*id*. at 51-52), we have already explained that this presumption does not attach here. And finally, Perez's proportionate-penalties claim was clearly forfeited, as he failed to raise it at trial or on direct appeal. See *People v. Thompson*, 2015 IL 118151, ¶ 39 (constitutional claims may be forfeited). Counsel should have amended the petition to overcome forfeiture by casting the proportionate-penalties argument in the context of ineffective assistance of trial and direct-appeal counsel. See *Williams*, 2024 IL 127304, ¶ 20; *Addison*, 2023 IL 127119, ¶ 23.

¶ 48    The court did not dismiss the petition on either forfeiture or untimeliness, so those oversights were not prejudicial. But they only underscore our conclusion that counsel did not provide reasonable assistance here. And as we have said, the failure to amend the proportionate-penalties claim in the petition all but guaranteed its defeat.

¶ 49    We vacate the dismissal of the postconviction petition and remand to allow counsel to comply with Rule 651(c). Upon such compliance, we direct the circuit court to reconsider the petition at the second stage. See *People v. Blanchard*, 2015 IL App (1st) 132281, ¶ 19; *Gaston*, 2026 IL App (1st) 240342-U, ¶ 34.

¶ 50    We leave open the possibility, of course, that postconviction counsel on remand may conclude that certain amendments to the petition cannot be made in good faith. As always, such decisions not to amend are typically presumed to be for a valid reason, absent contradictory evidence in the record, if counsel files a valid Rule 651(c) petition or if the record otherwise

establishes that she reviewed and considered all necessary parts of the record. See *Huff*, 2024 IL 128492, ¶ 24 (with valid Rule 651(c) certificate, we will "presume[] from the lack of an amendment that there were none to be made."); *Perkins*, 229 Ill. 2d at 51-52; *Boyce*, 2026 IL App (1st) 240573-U, ¶ 25.

¶ 51                                    CONCLUSION

¶ 52    The judgment of the circuit court is vacated. The cause is remanded for further second-stage proceedings consistent with this order.

¶ 53    Vacated and remanded.