2026 IL App (1st) 241651-U

SECOND DIVISION
May 19, 2026

No. 1-24-1651

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 07CR15241 |
| | ) | |
| DARRIAN DANIELS, | ) | Honorable |
| | ) | Neera Walsh, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Van Tine and Justice D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the second stage dismissal of defendant's postconviction petition because defendant failed to rebut the presumption that his postconviction counsel provided reasonable assistance under Illinois Supreme Court Rule 651(c).

¶ 2    Defendant Darrian Daniels appeals the trial court's second stage dismissal of his postconviction petition and argues that his postconviction counsel provided unreasonable assistance under Illinois Supreme Court Rule 651(c) (Ill. S. Ct. R. 651(c) (eff. July 1, 2017)). Specifically, defendant contends that postconviction counsel: (1) filed a noncompliant Rule 651(c) certificate; (2) argued against the merits of defendant's petition; and (3) failed to amend

defendant's petition to include any necessary evidence or explain its absence.

¶ 3　Following a jury trial, defendant was convicted of two counts of first degree murder in the June 2007 shooting deaths of Cordero Diggs and Michael Smith. He was subsequently sentenced to a mandatory term of natural life in prison. We recount the evidence presented at defendant's jury trial as necessary for our resolution of the issues raised on appeal. A full discussion of the evidence presented at defendant's trial is set forth in defendant's direct appeal. See *People v. Daniels*, 2015 IL App (1st) 131301-U.

¶ 4　At approximately 10:30 p.m. on June 1, 2007, Diggs and Smith were shot while standing on a back porch at 832 West 53rd Street in Chicago. At trial, James Washup testified that he was standing on the back porch next door and saw someone he knew as "Wiener" walking through the alley towards the victims. James identified defendant in court as the person he knew as Wiener. James saw defendant draw his gun, and James then ran into his house as he heard gunshots.

¶ 5　Tina Washup, James's sister, testified that she was upstairs in her bedroom of the house she shared with James. While she was cleaning her room, she heard footsteps in the gangway. When Tina looked out of her window, she did not see anyone. She then heard several gunshots and when she looked out the window again, she saw "Wiener" running through the gangway with a gun in his hand. Tina identified defendant in court as Wiener.

¶ 6　Rodney Jones, Smith's brother, testified that he had been standing outside on the porch with Smith and Diggs before the shooting. He went inside to use the bathroom and while inside he heard gunshots. Jones ran to the front of the house and looked out the window. He saw somebody getting into the passenger side of a car. Jones testified that he could not recognize the person's face as he came out of the gangway, but when the person opened the car door and the

2

interior light came on, Jones recognized that person as "Wiener." Jones identified defendant in court as Wiener.

¶ 7    Detective John Foster testified that both Jones and James picked defendant out of a photo array. Later, Jones, James, and Tina all identified defendant in a physical lineup after his arrest.

¶ 8    Kwame Tate testified for the defense. He knew Diggs and Smith, as well as Tina Washup. Tate testified that he had a conversation with Tina Washup during the summer of 2007, in which Tina told Tate that she did not see defendant shoot anyone, but Jones told her to say defendant was the shooter. Tina denied making this statement on the witness stand.

¶ 9    On direct appeal, defendant argued that his trial counsel was ineffective based on several grounds, including failing to object to the introduction of inadmissible prior consistent statements and eliciting prior consistent statements from witnesses, calling a witness on defendant's behalf that damaged his case, and failing to perfect the impeachment of a State witness. The reviewing court affirmed defendant's convictions and sentence. *Daniels*, 2015 IL App (1st) 131301-U.

¶ 10    In March 2016, defendant filed a *pro se* postconviction petition alleging multiple claims of ineffective assistance of both trial and appellate counsel. More specifically, defendant argued that trial counsel: (1) failed to argue the State failed to prove defendant guilty beyond a reasonable doubt; (2) failed to file a motion to quash the warrant for defendant's arrest; (3) abandoned a meritorious motion to suppress defendant's lineup identification; (4) failed to present a recorded conversation between Tina and Tate; and (5) failed to interview several witnesses, including J.T. Washup and Joanne Washup. Defendant also asserted his appellate counsel was ineffective for failing to raise these claims of trial counsel's ineffectiveness on direct appeal, as well as, failing to raise a claim regarding defendant's "invalid arrest." The trial court

3

summarily dismissed defendant's petition and found the claims were frivolous and patently without merit.

¶ 11    Defendant appealed that dismissal and focused on the claim that his trial counsel was ineffective for failing to present the audiotape recording of a conversation between Tina and Tate and appellate counsel was ineffective for failing to raise this issue on appeal. See *People v. Daniels*, 2019 IL App (1st) 162291-B, ¶ 10. According to defendant, this recording would have corroborated Tate's testimony by including Tina's admission that she did not see defendant the night of the shooting and was told to identify defendant by Jones. The reviewing court detailed trial counsel's representations on the record regarding the audiotape. Initially, defendant's attorney informed the State in written discovery of its existence and counsel stated he would tender a copy to the State. Later, counsel repeatedly stated that he could not find the tape in his office. Counsel subsequently informed the court that the tape had been damaged and he was attempting to have it repaired. Ultimately, counsel told the court that the tape had been repaired, but he did not intend to use it because he was "pretty sure it was taken without the witness's knowledge and probably an illegal recording." *Id*. ¶¶ 14-19.

¶ 12    Taking defendant's allegations as true, the reviewing court found defendant had set forth the gist of a constitutional claim because trial counsel's "misplacement of an audiotape which contained potentially exculpatory evidence is certainly arguably deficient and arguably prejudicial." *Id*. ¶¶ 20-21. The court reversed the dismissal of defendant's petition and remanded for second-stage proceedings. *Id*. ¶ 22.

¶ 13    On remand, in September 2019, a public defender was assigned to represent defendant for second-stage postconviction proceedings. Over several status hearings, postconviction counsel reported to the court his request to obtain the appellate record and his progress in

reviewing the record for "both appeals" in this case, as well as his investigation, including attempts to contact trial counsel and to locate three witnesses. Counsel also requested a subpoena for the police records, including a copy of the lineup photo. Counsel later informed the court that he had spoken with trial counsel, but trial counsel had been unable to locate his trial file and the Chicago police department had been unable to locate the lineup photos for this case. At a subsequent status date, counsel stated that he had an appointment to view the photographs impounded by the State after defendant's trial. In July 2023, postconviction counsel filed his Rule 651(c) certificate, which indicated that defendant's petition adequately set forth his constitutional claims. Counsel did not amend defendant's petition.

¶ 14    The State subsequently filed a motion to dismiss defendant's petition, and following a hearing, the trial court entered its written order granting the State's motion to dismiss defendant's petition. In its order, the court found that defendant failed to make a substantial showing of a violation of his constitutional rights.

¶ 15    On appeal, defendant argues that his postconviction counsel provided unreasonable assistance by (1) filing a nonstandard Rule 651(c) certificate; (2) arguing against the petition's merit; and (3) failing to make necessary amendments to defendant's petition. In response, the State maintains that postconviction counsel's Rule 651(c) certificate was proper and established a presumption of reasonable assistance, which defendant has failed to rebut. We note that defendant has not challenged the dismissal of his postconviction petition on the merits. Therefore, he has forfeited any argument that his claims of constitutional deprivation were meritorious. *People v. Cotto*, 2016 IL 119006, ¶ 49; Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing").

¶ 16    The Post-Conviction Hearing Act (the Act) allows a defendant to challenge a conviction based on a violation of their rights under the United States Constitution or the Illinois Constitution or both. 725 ILCS 5/122-1(a) (West 2018); *People v. Coleman*, 183 Ill. 2d 366, 378-79 (1998). Postconviction relief is limited to constitutional deprivations that occurred at the original trial. *Id*. at 380. A proceeding brought under the Act is not an appeal of a defendant's underlying judgment, instead it is a collateral attack on the judgment. *People v. Evans*, 186 Ill. 2d 83, 89 (1999).

¶ 17    This case is before us following the trial court's second-stage dismissal. At the second stage, the defendant may request counsel be appointed to represent him or her. 725 ILCS 5/122-4 (West 2020). The right to counsel in proceedings under the Act is not a constitutional right, but strictly a matter of legislative grace derived from the Act. *People v. Huff*, 2024 IL 128492, ¶ 21 (citing *People v. Custer*, 2019 IL 123339, ¶ 30). Further, a postconviction defendant is entitled to only a reasonable level of assistance, which is a standard lower than that provided by the federal or state constitutions. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006).

¶ 18    "Rule 651(c) limits the duties postconviction counsel must undertake at the second stage of proceedings." *People v. Urzua*, 2023 IL 127789, ¶ 54. Pursuant to Rule 651(c), postconviction counsel may file a certificate stating that he or she (1) consulted with the defendant to ascertain his contentions of the deprivation of a constitutional right, (2) examined the record of the proceedings at the trial, and (3) amended the defendant's *pro se* petition, if necessary, to ensure that defendant's contentions are adequately presented. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Substantial compliance with the rule is sufficient. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 18. Once postconviction counsel has filed a Rule 651(c) certificate, a rebuttable presumption arises that postconviction counsel provided reasonable assistance. *Custer*, 2019 IL 123339, ¶ 32.

The burden is on the defendant to overcome this presumption by demonstrating his postconviction counsel failed to substantially comply with the duties mandated by Rule 651(c). *People v. Addison*, 2023 IL 127119, ¶ 21.

¶ 19    The purpose of Rule 651(c) is for counsel to shape the defendant's claims into proper legal form and present those claims to the court. *People v. Perkins*, 229 Ill. 2d 34, 43-44 (2007). However, postconviction counsel is not obligated to advance frivolous or spurious claims on defendant's behalf to satisfy the third requirement of Rule 651(c). *People v. Greer*, 212 Ill. 2d 192, 205 (2004). We review whether postconviction counsel substantially complied with Rule 651(c) *de novo. People v. Bass*, 2018 IL App (1st) 152650, ¶ 13. Under a *de novo* standard, we give no deference to the trial court's judgment or reasoning. *People v. Carlisle*, 2019 IL App (1st) 162259, ¶ 68.

¶ 20    Defendant first asserts that postconviction counsel filed a facially noncompliant Rule 651(c) certificate and thus, no presumption of reasonable assistance arose under the rule. In response, the State argues that counsel was not required to mirror the language of Rule 651(c) to show substantial compliance with the rule. Because postconviction counsel filed a Rule 651(c) certificate, he is presumed to have provided reasonable assistance to defendant. See *Custer*, 2019 IL 123339, ¶ 32. Counsel's Rule 651(c) certificate provided the following:

> "1.     I have consulted with the petitioner, Darrian Daniels, by letter and phone
>
> to ascertain his claims of a deprivation of his constitutional rights. I have
>
> conducted an investigation into those claims. I have talked to trial counsel,
>
> subpoena[e]d police reports in this matter, talked to purported witnesses, and
>
> examined exhibits impounded by the trial court from the original trial.
>
> 2.     I have examined the record of the proceedings at [defendant's] trial and

sentencing as to 07CR1524101.

    3.     I have examined [defendant's] *pro se* Petitions for Post-Conviction Relief. I am unable to make any amendments to [defendant's] *pro se* pleadings. [Defendant's] petition adequately states his deprivations of his constitutional rights."

¶ 21    According to defendant, this certificate fails to comply with Rule 651(c) in two ways. First, counsel's examination of the record was lacking because counsel only indicated that he reviewed the trial record despite defendant's assertion of ineffective assistance of appellate counsel. However, the language of Rule 651(c) only requires counsel to indicate that he "has examined the record of the proceedings at the trial." Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Thus, counsel's certificate clearly complied with this requirement under Rule 651(c).

¶ 22    Moreover, the record belies defendant's claim that counsel did not review the appellate record. Counsel stated in multiple written filings, as well as at status hearings, that he had requested, received, and reviewed the appellate record. At a September 2021 status hearing, postconviction counsel stated that he had "the record in this case, both appeals." Later, in a March 2022 motion for a continuance, counsel noted that he had "completed [his] review of the record."

¶ 23    Other than pointing to counsel's language in the certificate, defendant has failed to explain how counsel's examination of the record was insufficient. See *Pendleton*, 223 Ill. 2d at 475-76 (Rule 651(c) only requires counsel to review as much of the record as is necessary to adequately present the defendant's constitutional claims). He does not point to any errors or misstatements in court but instead assumes counsel failed to substantially comply by not indicating that he reviewed appellate materials. Since the record establishes that counsel

reviewed the relevant portion of the record, defendant cannot overcome the presumption that counsel substantially complied with Rule 651(c) on this basis. See *People v. Tillery*, 2022 IL App (1st) 200045, ¶ 25 (finding substantial compliance because the record as a whole showed postconviction counsel told the court that she reviewed trial counsel's "trial file" for her investigation of the defendant's postconviction claims and nothing in the record suggested that counsel failed to examine all relevant portions of the trial record pertinent to the defendant's postconviction claims).

¶ 24 Next, defendant contends that counsel's Rule 651(c) certificate was "facially deficient" because counsel stated that he was "unable to make any amendments to [defendant's] *pro se* pleadings." According to defendant, the inclusion of this sentence rendered counsel's certificate noncompliant and no presumption of compliance was created. However, defendant fails to cite any authority holding that counsel's failure to follow the exact language of Rule 651(c) makes the certificate noncompliant on its face. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (appellant is required to adequately develop his argument with citation to relevant authority).

¶ 25 Contrary to defendant's contention, counsel is not required to mirror the rule's language in his or her certificate. *People v. Landa*, 2020 IL App (1st) 170851, ¶ 45; see *People v. Gaston*, 2026 IL App (1st) 240342-U, ¶ 24 ("We do not require specific language or buzzwords in a Rule 651(c) certificate"). Rather, the certificate must substantially demonstrate that counsel performed the duties required by the rule. *Id.* ¶ 49.

¶ 26 Defendant asserts that counsel's statement that he was "unable to make any amendments" failed to adequately attest that he made the necessary amendments to the petition. However, counsel followed this sentence by stating that defendant's petition "adequately states his deprivations of his constitutional rights." When the statement regarding amendments is read in

context, counsel's finding that no amendments were necessary is clear. Postconviction counsel was not obligated to amend or supplement frivolous claims. *Huff*, 2024 IL 128492, ¶ 22; *Greer*, 212 Ill. 2d at 205.

¶ 27    We find defendant's reliance on *People v. Bashaw*, 361 Ill. App. 3d 963, 969 (2005), to be misplaced. There, the reviewing court found that postconviction counsel's Rule 651(c) certificate failed to indicate that she made "any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." (Internal quotation marks omitted.) *Id*. Counsel's Rule 651(c) certificate stated that the defendant " 'indicated that he wishes to rely on his original postconviction petition.' " *Id*. The *Bashaw* court concluded that determining "[w]hat amendments to a postconviction petition, if any, are necessary to adequately present the defendant's contentions is a matter calling for the exercise of an attorney's professional judgment" and conceding that decision to the defendant did not fulfill his or her duty to exercise that judgment. *Id*. *Bashaw* is not analogous here because postconviction counsel's certificate did not indicate that counsel passed the strategic decision of determining what amendments were necessary to defendant.

¶ 28    While postconviction counsel's certificate did not mirror the language of Rule 651(c), he substantially complied with the rule. Postconviction counsel stated that he communicated with defendant by letter and phone to ascertain his claims of a deprivation of his constitutional rights. Counsel stated that he conducted an investigation into defendant's claims, talked to trial counsel, subpoenaed police reports, talked to "purported witnesses," and examined the impounded trial exhibits and record of proceedings from defendant's trial and sentencing, and determined that amendments were unnecessary as defendant's petition adequately stated his constitutional claims. Further, we find postconviction counsel's statement that he investigated defendant's

10

claims, including speaking with trial counsel and the purported witnesses, supports his decision to stand on defendant's petition. Counsel's statements, taken in totality, were sufficient to meet the requirements of Rule 651(c). Because counsel's certificate comported with Rule 651(c), we start with the rebuttable presumption that counsel provided defendant with reasonable assistance. *Custer*, 2019 IL 12339, ¶ 31.

¶ 29     Defendant next argues that postconviction counsel was unreasonable for failing to make any necessary amendments to his petition and to argue in support of defendant's claims at the hearing on the State's motion to dismiss. More specifically, defendant contends that counsel provided unreasonable assistance when: (1) counsel "actively argued" against one of defendant's claims without seeking to withdraw from the case; (2) counsel failed to include necessary evidence for defendant's petition or explain its absence; and (3) counsel failed to amend the petition to respond to the State's motion to dismiss. The State maintains that defendant cannot overcome the presumption that his postconviction counsel performed reasonably, and additionally, defendant's claims lack merit.

¶ 30     As previously stated, defendant raised multiple claims in his petition alleging his trial counsel was ineffective, including that counsel failed to pursue a motion to suppress his lineup identification, failed to present the audiotape recording of a conversation between Tina and Tate that supported the defense strategy, and failed to interview and call witnesses who would have impeached the eyewitness testimony, specifically Joanne Washup and J.T. Washup. He also alleged that his appellate counsel was ineffective for failing to raise these claims on appeal. No affidavits or supporting documentation were attached to his petition to substantiate any of his claims.

¶ 31     At the hearing on the State's motion, postconviction counsel made the following

11

statement.

> "Judge, as your Honor knows, I did not make any amendments or supplements to Mr. Daniels' petition. I did conduct an investigation, spoke with the witnesses named in the petition, in the pro se petition, spoke with [trial counsel], who was the trial attorney, who had no memory of this case and did not have his trial file. He did not -- does not practice in this realm of the law anymore.

> According to [trial counsel], again, where I talked to him on a number of occasions, [he] does not have any of those documents from almost 20 years ago now, I guess.

> Judge, I also, if your Honor remembers, was able to subpoena and look at [the prosecutor's] records and lineup photos that were taken as to what Mr. Daniels' other allegations in his pro se petition were. Based on my view and consulting with the counsel about that lineup photo, Judge, I was unable to make any allegations that [trial counsel] was ineffective for failing to raise a motion to suppress that identification.

> Judge, with that, I would stand on Mr. Daniels' petition."

¶ 32    According to defendant, postconviction counsel improperly argued against trial counsel's ineffectiveness for failing to proceed on a motion to suppress defendant's identification. We disagree with defendant's interpretation of counsel's statements at the hearing. When the entirety of counsel's statement is considered, these remarks briefly explained his investigation and why he chose not to amend defendant's petition. Counsel specifically addressed his subpoena of the lineup photo and indicated to the court that he was unable to amend defendant's claim that trial counsel was ineffective on that basis. Counsel did not argue that defendant's petition lacked

merit, rather he indicated why he could not make any additional allegations and was standing on defendant's petition. Based on counsel's Rule 651(c) certificate and his brief statement at the hearing, we presume that counsel had no viable information to supplement defendant's ineffective assistance claims. See *Huff*, 2024 IL 128492, ¶ 22; *Greer*, 212 Ill. 2d at 205.

¶ 33    "Fulfillment of the third obligation under Rule 651(c) does not require postconviction counsel to advance frivolous or spurious claims on defendant's behalf. If amendments to a *pro se* postconviction petition would only further a frivolous or patently nonmeritorious claim, they are not 'necessary' within the meaning of the rule." *Greer*, 212 Ill. 2d at 205. Contrary to defendant's assertion, counsel did not concede that defendant's petition was lacking and failed to make any necessary amendments. Rather, counsel stated that he was unable to make an amendment after conducting his investigation, including reviewing the lineup photograph and speaking with trial counsel. Defendant has not rebutted the presumption that counsel provided reasonable assistance by offering this brief explanation to the court.

¶ 34    The same reasoning applies to defendant's contention that counsel failed to include necessary evidence or explain its absence. According to defendant, postconviction counsel failed to supplement the petition with the audiotape conversation between Tina and Tate or explain why it was unavailable. He points to this court's finding that trial counsel's alleged misplacement of the audiotape was "arguable on its merits." See *Daniels*, 2019 IL App (1st) 162291-B, ¶ 21. However, the *Daniels* court explicitly stated that it "express[ed] no opinion at this stage as to whether petitioner will ultimately be able to prevail on his ineffective-assistance claim." *Id*. This previous finding is of no moment.

¶ 35    Defendant's argument regarding the audiotape is premised on multiple assumptions: trial counsel still had this audiotape, the tape was admissible, and it supported the defense strategy.

However, trial counsel already indicated at trial that the audiotape was inadmissible under Illinois eavesdropping statutes. Further, postconviction counsel stated on the record that trial counsel no longer had his trial file and had no memory of defendant's case. Again, postconviction counsel is under no duty to amend or supplement a frivolous claim. *Huff*, 2024 IL 128492, ¶ 22; *Greer*, 212 Ill. 2d at 205. Given counsel's representations, defendant cannot overcome the presumption of reasonable assistance.

¶ 36    Similarly, defendant asserts postconviction counsel failed to secure evidence of the potential testimony of J.T. Washup and Joanne Washup or explain its absence. Defendant offers only unsupported allegations from his own petition that their testimony would have cast doubt on James Washup's eyewitness testimony. As quoted above, counsel stated that he spoke with witnesses named in the petition. Since postconviction counsel certified on the record that defendant's petition adequately set forth his constitutional claims and he was unable to amend defendant's petition, we must "presume[] from the lack of an amendment that there were none to be made." *Huff*, 2024 IL 128492, ¶ 24. Here, counsel made the strategic decision not to include the information he learned from his interviews, which presumably did not support defendant's claim.

¶ 37    For the same reasons, defendant's contention that postconviction counsel failed to amend the petition to respond to the State's legally incorrect arguments lacks merit. Postconviction counsel is under no obligation under Rule 651(c) to file a response to the State's motion. See Ill. S. Ct. R. 651(c) (eff. July 1, 2017). We again presume that counsel chose not to file a response as a strategic decision.

¶ 38    Given postconviction counsel's statements on the record, including at status hearings, as well as the Rule 651(c) certificate, the record clearly established counsel thoroughly reviewed

the record, spoke with witnesses and trial counsel, and subpoenaed police records before concluding that no good faith amendments could be made to the petition. In this situation, counsel appropriately opted to stand on the petition. See *People v. Buchanan*, 2024 IL App (1st) 221579-U, ¶ 43 ("an attorney is not unreasonable for standing on the original petition and filing a Rule 651(c) certificate where the petition cannot be amended to raise viable nonfrivolous claims"). Accordingly, defendant has failed to rebut the presumption that postconviction counsel provided reasonable assistance and the trial court properly dismissed defendant's postconviction petition at second stage proceedings.

¶ 39    Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

¶ 40    Affirmed.